karen irene, House of Lewis
Real Party in Interest
Third Party Intervenor
c/o 484 Lake Park Ave #117
city Oakland, California state of the Union
510-495-5699

KAREN I. LEWIS, Defendant

FILED
FEB 17 2017
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CROWD FUND INVESTMENT GROUP LLC,<br><br>Plaintiff,<br><br>vs.<br><br>JON LEWIS aka JONATHAN LEWIS, aka JONATHAN ANTHONY, et al.,<br><br>Defendants | ) | CASE NO. C17- 0803<br><br>In a petition for<br><br>REMOVAL OF SUPERIOR COURT, ALAMEDA COUNTY, STATE OF CALIFORNIA<br><br>CASE NUMBER RG16838956 |

DMR

# NOTICE OF REMOVAL
# CIVIL RIGHTS VIOLATIONS

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE:** defendant, KAREN I. LEWIS hereby removes to this Court from the above captioned State court action:

**CASE NUMBER RG16838956**

1. **<u>On November 15, 2016</u>**, an action was commenced in the Limited Civil Division of the Alameda Superior Court of California County of Alameda titled as captioned above, a copy of which is attached hereto as Exhibit A.

2. Plaintiff has purported that Defendant in said case was shortly thereafter served with due process, to which Defendant KAREN I. LEWIS (hereinafter "Defendant"), specifically denies, with said denial having been properly and timely stated in Defendant's Motion to Quash, which is attached hereto as Exhibit B.

3. Immediately after denial of Defendant's Motion to Quash, the State court compelled Defendant to file an answer to the complaint within five days, which was performed by Defendant and is attached hereto as Exhibit C, with such starting date as the start date of effective service, hence;

4. This Notice is timely and is filed within 30 days after effective service of the Plaintiff's complaint and summons beginning on the date Defendant's Motion to Quash was denied; it is the lack of consideration of elements of failure to properly effect service as the basis of this Civil Rights Violation issue, as well as other substantive issues of both State and Federal law, as well as other federal questions as raised herein below that the Petitioner objects to the limited jurisdiction of the State court as the Petitioner has not agreed to a summary adjudication of this matter, and proceeding therein is a violation of Petitioner's due process and equal protection rights pursuant to 42 USC 1983 and other Federal statutes, and therefore this case is properly removed pursuant to 28 U.S.C. §§1443(1) and 1446(b), which states:

> "…a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred

by section 1332 of this title [28 USCS § 1332] more than 1 year after commencement of the action.

**5.** Therefore, this case first became removable on 2/2/17 and is hereby removed to the jurisdiction of the United States District Court, Northern California Division.

**6.** This action is a civil action of which this Court has original jurisdiction and may be removed under Title 28 USC § 1443(1) in that it arises under Title 42 USC § 1983, 1988(a)

**PARTIES:**

1) Defendant is an *ens legis UNITED STATES PERSON*, with Third Party Intervenor, karen irene, House of Lewis, as Authorized Representative for Defendant, who therefore has standing as real party in interest to remove this suit in pursuant to United States Code, Statutes At Large and other Federal Codified Regulations applicable thereto.
2) Plaintiff, **CROWD FUND INVESTMENT GROUP LLC**, is and at all times herein mentioned, a Limited Liability Company organized and existing under the laws of the State of California with an unknown address. Attorney for Plaintiff's offices located at 155 North Redwood Drive, San Rafael, California 94903.

PLAINTIFF AND STATE COURT HAVE FAILED TO CONFORM TO LAWFUL REQUIREMENTS:

**1.** Defendant in Case RG16838956 was served with non-conforming paperwork styled as UD SUMMONS. The veracity of the paperwork is unclear, as it will be noted that the entity styled as THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, "COUNTY OF ALAMEDA" is not the same as the endorsement styled as, "Alameda County". This paperwork, absent the seal of a bona fide court of record appears to be a simulated legal process and a

violation of Defendant's civil rights to due process. (SEE California Code of Civil Procedure, Sections 14, 153, 412.20(a) and Govt. Code, Sec. 68076 and Const. 1963, Art. VI § 19);

**2.** Defendant is not the named entity styled as KAREN I. LEWIS that is listed as a defendant in the SUMMONS. Defendant's full legal name, Karen Irene Lewis, is being concealed from official records and instead, a pseudonym is being used to represent defendants;

**3.** Further obfuscating the nature and substance of the paperwork served by Plaintiff's attorney Jonathan Seigel, the alleged officers of the court styled as, THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ALAMEDA, represent themselves by pseudonym instead of their full legal name. Legal instruments require licensed names (Rule 5.5) given under oath – not pseudonyms.

**4.** It is a requirement in California that judges be licensed to practice law within California, yet judges do not use the Name on their Attorneys License/Roll of Attorneys, or affidavit of identity, and they do not have a Certificate of Election under the Great Seal of the state countersigned by both the governor and secretary of state. They have no authority to judge anyone, thus to allow these actors to proceed to take property without legal and lawful due process would be a serious violation of Due Process rights of karen irene, Real Party in Interest, and the Civil Rights of Defendant;

**5.** Additionally, the legal title holders of the property in question, JONATHAN ANTHONY LEWIS TRUST and KAREN IRENE LEWIS TRUST, are foreign trusts holding legal title and entrusted to protect the equitable interests and beneficial rights of beneficiaries in the private that are not cognizable in a public forum, with said legal title holders that have not been named in the UD SUMMONS.

**6.** The Deed of Trust that was attached to the SUMMONS was the purported instrument utilized to foreclose. The alleged lender never signed the Deed of Trust. They also never signed the loan application—they never signed anything. Therefore this is not a bilateral,

business contract that is binding on two or more parties, which makes the alleged right to sale upon which the trustee relied, void on its face and thus the Trustee's Deed Upon Sale that Plaintiff is relying upon is equally void.

**7.** California Government Code Section 100 (b) states: The style of all process shall be "The People of the State of California," and all prosecutions shall be conducted in their name and by their authority. This "style" is not used in the mentioned case. Instead these simulated legal processes substitute pseudonyms, contrary to law.

**PLAINTIFF LACKS STANDING TO PURSUE UNLAWFUL DETAINER**

**1)** I, karen irene, for Defendant, am informed, believe and thereon allege that both the Non-Judicial Foreclosure and the subsequent filing of the Unlawful Detainer action are fatally defective and are were filed as a fraud on the respective public records, and are in violation of 12 USC 1983, Civil Rights requirements for proper and mandatory adherence to Due Process,. That both of these processes fail at the first defect; in this case the first defect occurred when I was led to believe that there was a mutually beneficial agreement in regards to the securing of this loan however, I have since discovered fraud in the inducement of this loan,

**2)** **Offsetting Obligation:** The trustor also has the right of offset against the amount claimed by the beneficiary any amount due the trustor from the beneficiary. [See Hauger v. Gates (1954) 42 Cal.2d 752, 755; 249 P.2d 609; Richmond v. Lattin (1883) 64 Cal. 273; 30 P. 818; Goodwin v. Alston (1955) 130 Cal.App.2d 664, 669; 280 P.2d 34; Cohen v. Bonnell (1936) 14 Cal.App.2d 38; 57 P.2d 1326; Zarillo v. Le Mesnacer (1921) 51 Cal.App. 442; 1196 P.902 (damages for conversion offset against debt secured by chattel mortgage); Williams v. Pratt (1909) 10 Cal.App. 625, 632; 103 P. 151.] In Goodwin, supra, the

mortgagor established that the mortgagee charged usurious interest, and the penalty of the trebled interest payments along with other amounts were setoff against the mortgage debt. As a result, the debt was effectively satisfied, the mortgage was thereby extinguished and no foreclosure was permitted, and the mortgagee was held liable to the mortgagor for damages. (See 130 Cal.App.2d at 668-69.)

**3)** The Supreme Court made clear in Hauger, supra, that the trustor, in the context of the non-judicial foreclosure of a deed of trust, could use the right of setoff. [See 42 Cal.2d at 755.] Normally, setoff is employed defensively through an affirmative defense or cross-complaint (or formerly counterclaim) in response to an action for money. The court in Hauger, however, saw no distinction between the right of setoff held by a trustor defending a foreclosure action or by a trustor affirmatively attacking a non-judicial foreclosure proceeding. (Id. at 755-56.) Accordingly, the Supreme Court held that the trustor, as plaintiff, could establish the impropriety of a foreclosure by showing that the trustor was not in default on his obligation since the obligation was offset by an obligation which the beneficiary owed to him. (Id. at 753, 755.) The court further held that the trustor did not have to bring an independent action to establish the setoff. (Id. at 755.) Moreover, the court declared that unliquidated as well as liquidated amounts could be setoff; thus, the court allowed the trustor to setoff an unliquidated claim for damages for breach of contract. (Id.)

**4)** Hauger and the other cases cited above are based on former Code of Civ. Proc. § 440 which has been superseded by Code of Civ. Proc. § 431.70. The rule of these cases should not be altered because the new section appears broader than the old. Furthermore, the Legislative Committee Comment to section 431.70 not only states that the new section continues the substantive effect of section 440 but also approvingly cites Hauger.

5) The right of setoff has substantial significance in contesting the validity of any foreclosure since the trustor may establish that no default occurred or, indeed, no indebtedness exists because of an offsetting amount owed by the beneficiary to the trustor. As discussed above, this offset may be a liquidated or an unliquidated claim. In addition, the claim which the trustor may wish to offset may be barred by the statute of limitations at the time of the foreclosure, but as long as the trustor's claim and the beneficiary's claim coexisted at any time when neither claim was barred, the claims are deemed to have been offset. [See Code of Civ. Proc. § 431.70.] The theory is that the competing claims which coexisted when both were enforceable were offset to the extent they equaled each other without the need to bring an action on the claims. Therefore, since the offsetting claim is deemed satisfied to the extent it equaled the other claim, there was no existing claim against which the statute of limitation operates. See Jones v. Mortimer (1946) 28 Cal.2d 627, 632-33; 170 P.2d 893; Singer Co. v. County of Kings (1975) 46 Cal.App.3d 852, 869; 121 Cal.Rptr. 398; see also Hauger v. Gates, supra, 42 Cal.2d 752, 755.]

6) The right of setoff not only gives the trustor the ability to setoff liquidated and unliquidated claims for money paid or for damages, but also permits setoffs for statutory penalties to which the trustor may be entitled because of the beneficiary's violation of the law. In Goodwin v. Alston, supra, 130 Cal.App.2d 664 the debtor in a foreclosure action offset his obligation against the treble damages awarded to him for the creditor's usury violations. Similarly, the penalty for violating the federal Truth in Lending Act — twice the amount of the finance charge but not less than $100 or more than $1,000 [15 U.S.C. § 1640(a)(2)(A)(i)] — may be offset against the obligation owed the creditor.-' [See 15 U.S.C. § 1640(h); Reliable Credit Service, Inc. v. Bernard (La.App. 1976) 339 So.2d 952,

954, cert, den. 341 So.2d 1129, cert, den. 342 So.2d 215; Martin v. Body (Tex.Civ.App. 1976) 533 S.W.2d 461, 467-68].

7) Although Truth in Lending penalties may be offset against the creditor's claim, the debtor may not unilaterally deduct the penalty; rather, the offset must be raised in a judicial proceeding, and the offset's validity must be adjudicated. [15 U.S.C. § 1640(h); see e.g., Pacific Concrete Fed. Credit Union v. Kauanoe (Haw. 1980) 614 P.2d 936, 942-43; Lincoln First Bank of Rochester v. Rupert (App.Div. 1977) 400 N.Y.S. 618, 621.]

8) Although no cases have authorized the trustor's offset of punitive damages against the obligation owed, no reason appears to prevent the offset of punitive damages. Normally, if punitive damages were appropriate, sufficient fraud, oppression, or other misconduct would be established to vitiate the entire transaction. But even if the transaction were rescinded, the injured trustor likely would be required to return any consideration given by the offending beneficiary. The trustor almost always will have spent the money, usually to satisfy another creditor or to purchase goods or services which cannot be returned for near full value. A punitive damage offset may reduce or eliminate the trustor's obligation to restore consideration paid in a fraudulent, oppressive, or similarly infirm transaction.

9) These frauds were furthered when the Plaintiff filed the Unlawful Detainer action after the matter had been settled and closed, indeed a case was already decided;

10) The Superior Courts of Alameda County, California, routinely proceed under the provisions of California Civil Code §2924, whose constitutionality Removing Defendant challenges, with evictions following foreclosures, regardless of the actual legality of the foreclosure proceedings, because of certain presumptions created by operation of law, and legal defenses to eviction, such as lack of lawful title or fraud in the acquisition of title on the part of the evicting party, are not allowed. Additionally, the threat of there

being no ratification of commencement is highly likely in such Court as these Court's often waive such formalities and there is a question as to whether or not **CROWD FUND INVESTMENT GROUP LLC** is entitled to bring such an action,

**11)** Finally, the Petitioner is informed, believes and based thereon alleges that the processes of that court, including the simulated legal process styled as UNLAWFUL DETAINER SUMMONS AND COMPLAINT is not regular on its face, and is not in due form and lacks authority to proceed. Moreover, such summary processes brought into the Superior Court are not nor are they ever *"regular on their face."*

**Regular on its Face** -- "Process is said to be "regular on its face" when it proceeds from the court, officer, or body having authority of law to issue process of that nature, and which is legal in form, and contains nothing to notify, or fairly apprise any one that it is issued without authority."

**12)** *"Fraud in the procurement of a judgment sufficient to warrant relief there from is properly identified with fraud upon the court." An order that exceeds the jurisdiction of the court is void, and can be attacked in ANY proceeding in ANY court where the validity of the judgment comes into issue." See Rose v. Himely, (1808) 4 Cranch 241, 2 Led 608; Pennoyer v. Neff, (1877) 95 US 714, 24 L Ed 565; Thompson v. Whitman (1873) 18 Wall 457, 21 I Ed 897; Windsor v. McVeigh, (1876) 93 US 274, 23 L Ed 914; McDonald v. Mabee, (1917) 243 US 90, 37 S Ct 343, 61 L Ed 608.*

**13)** *"If a judgment is void, relief is not a discretionary matter it is mandatory." Orner v. Shalala, 30 Fd3 1307 (9th Cir. 1994) see also 243 BR 380 (D. Ariz. 1999)*

**14)** *"**Due Process Clause** also encompasses a third type of protection a guarantee of fair procedure." Zinermon v. Burch, 494 U.S. 1113 (1990) "When fraud is used by lawyers and government officials in the judicial process, orders and judgment are void and jurisdiction is lost". Browning v. Navarro 826 F2d 335,342-45 (5th Cir. 1987) 826 Fd2*

*335 342-45 (5th Cir. 1987) cites Hazel-Atlas Glass v. Hartford Empire Co., 322 U.S. 238 64 S.Ct. 997 (1944) In re Laing, 945 F2d 354 (10th Cir. 1991);*

*15)* Justice Joseph P. Bradley who delivered the Supreme Court decision regarding the Civil Rights Act of 1875 which was found to be unconstitutional commented that: *"individual invasion of individual rights is not the subject-matter of the 14th Amendment. It has a deeper and broader scope.* ***It nullifies and makes void all state legislation, and state action of every kind, which impairs the privileges and immunities of citizens of the United States, or which injures them in life, liberty or property without due process of law, or which denies to any of them the equal protection of the laws."***

**16)** Based on the above and upon personal knowledge, information and belief the Defendant is not requesting that this Court rule on whether or not the orders or judgments complained of are null and void, simply because she knows that they are in fact, and at law Null and Void, ab initio.

**17)** That *Article III section 2* of the constitution addresses contract law. When the *Eleventh Amendment* was passed, not only was judicial power restricted, but the law of contract was similarly restricted and the Courts now operate under common law private contract to the people – commerce 'condition to pay.'

**18) U.S. Constitution, Article III, Section 2** – The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority; — to all cases affecting ambassadors, other public ministers and consuls; — to all cases of admiralty and maritime jurisdiction; — to controversies to which the United States shall be a party; — to controversies between two or more states; — **between a state and citizens of another state**; — between citizens of different states; — between citizens of the same state

claiming lands under grants of different states, and between a state, or the citizens thereof, and foreign states, citizens or subjects.

19) However, the ratification of the Eleventh Amendment on February 7, 1795 effectively **altered** Article III, Section 2, and now "**All**" public offices are using the Eleventh Amendment as a defense against being sued, whereas, the Eleventh Amendment actually removed protection since judicial power no longer extended to any suit in Law or Equity, and subsequently afforded the people the same protection as any level of government. The people cannot be charged in Law or Equity claims by anyone in the government. The court only has one action as revealed by the Rules of Civil Procedure: "Rule 2—One form of Action : There is only one form of action – the civil action." Civil action can be brought only by the people and not any level of government.

20) **Amendment XI** – the judicial power of the United States **shall not be construed to extend to any suit in law or equity**, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

21) The Petitioner is aware of the **Stripping Doctrine**. But the Constitution was amended again in 1868 to protect various civil rights, and Section 5 of the 14th Amendment granted Congress the power to enforce, by appropriate legislation, the provisions of that amendment. The courts have recognized that this new amendment, again a consensus of the people, abrogates the immunity provided by the 11th Amendment. When Congress enacted legislation under the auspices of Section 5 of the 14th Amendment, they specifically abrogated *11th Amendment immunity*, and states can, under such federal statutes be prosecuted in federal court.

22) The Petitioner will refer the Court's attention to the *1875 Civil Rights Act*. The Supreme Court ruled that this Congressional enactment was unconstitutional. *Civil Rights Acts (1866, 1870, 1875, 1957, 1960, 1964, 1968)* US legislation. *The Civil Rights Act (1866)*

gave African-Americans citizenship and extended civil rights to all persons born in the USA (except Native Americans). The 1870 Act was passed to re-enact the previous measure, which was considered to be of dubious constitutionality. In 1883, the US Supreme Court declared unconstitutional the 1870 law. The 1875 Act was passed to outlaw discrimination in public places because of race or previous servitude. **The act was declared unconstitutional by the Supreme Court (1883–85),** *(U.S. Supreme Court Civil Rights Cases, 109 U.S. 3 (1883) Civil Rights Cases Submitted October Term, 1882 Decided October 16th, 1888 109 U.S. 3)* **which stated that the 14th Amendment, the constitutional basis of the act, protected individual rights against infringement by the states, not by other individuals**. The *1957 Act* established the Civil Rights Commission to investigate violations of the 15th Amendment. The 1960 Act enabled court-appointed federal officials to protect black voting rights. An act of violence to obstruct a court order became a federal offense. The 1964 Act established as law equal rights for all citizens in voting, education, public accommodations and in federally-assisted programs. The 1968 Act guaranteed equal treatment in housing and real estate to all citizens

**23)** No level of the Executive or Judicial government has ever introduced into any Court action a real party of interest under *Rule 17*. The Court has no jurisdiction under *12(b)(1), (2), (3)* over the Petitioner or people. **Decision and Rationale:** The 8-1 decision of the Court was delivered by Justice Joseph P. Bradley, with John Marshall Harlan of Kentucky alone in dissent. The Court decided that the Civil Rights Act of 1875 was unconstitutional. Neither the 13th nor the 14th amendment empowers the Congress to legislate in matters of racial discrimination in the private sector, Bradley wrote. "The *13th Amendment* has respect, not to distinctions of race…but to slavery…." The 14th Amendment, he continued, applied to State, not private, actions; furthermore, the

abridgment of rights presented in this case are to be considered as "ordinary civil injuries" rather than the imposition of badges of slavery.

24) It is a clearly established principle of law that an attorney must represent a corporation, it being incorporeal and a creature of the law. An attorney representing an artificial entity must appear with the corporate charter and law in his hand. A person acting as an attorney for a foreign principal must be registered. See, Foreign Agents Registration Act (22 USC § 612 et seq.); Victor Rabinowitz et al v. Robert F. Kennedy, 376 US 605. Failure to file said "Foreign Agents Registration Statement" goes directly to the jurisdiction and lack of standing to be before the Court and is a felony pursuant to 18 USC 219, 951.

25) **Foreclosure is a "Drastic Sanction."** *Baypoint Mortgage Corp. v. Crest Premium Real Estate etc. Trust, supra, 168 Cal.App.3d 818, 837.* Irreparable injury will almost always be involved in a home foreclosure. **Since a bona fide purchaser may buy the property at a foreclosure sale free of many, if not all, of a particular trustor's defenses to the sale, and it is generally understood that the court's failure to enjoin an improper foreclosure may doom the trustor to the loss of the property.**

26) **All the above being substantive in nature as to the violations of Due Process that make void any standing of the Plaintiff to proceed in a limited jurisdiction court to obtain a Writ of Possession to remove Myself and other parties of real interest from the property, as well as the fact that another party with Status and Standing to do so has proceeded in the private sector to establish equitable standing to effect the necessary offset as described herein above, above and beyond that which operates in the public sector in law or civil procedures, and the Court herein is Noticed that said party has fully effected equitable settlement and extinguishment of the purported obligations of the trustors, and having done so PRIOR to the purported Trustee**

**<u>Sale, has established purposeful intent to defraud the Real Parties in Interest, the State of California, County of Alameda, and the United States, which shall be brought forth by said party under the protections of and proceeding pursuant to the jurisprudence of Exclusive American/English Equity</u>**.

**27)** IT IS THEREFORE MY INTENT AND PURPOSE TO NOTICE THIS COURT THAT EQUITY HAS BEEN DONE BY PRIVATE ACTS AND BY SPECIAL DEPOSIT THAT HAVE MERGED THE LEGAL AND EQUITABLE TITLES TO LAND, AND PROPERTY, REAL, PERSONAL, TANGIBLE, AND INTAINGIBLE, CORPOREAL AND INCORPOREAL, THAT EFFECTED THE LEGAL AND EQUITABLE EXTINGUISHMENT OF THE DEBT AND THAT TERMINATED THE TRUST PRIOR TO THE PURPORTED TRUSTEE SALE, AND THEREFORE, PLAINTIFF AND OTHER UNNAMED PARTIES HAVE PROCEEDED ULTRA VIRES AND WITHOUT STANDING TO PURSUE THEIR CLAIMS.

**28)** I, karen irene, am before this Court of Record by Special Visitation and Special Deposit, to protect substantive rights of myself, without waiving any Equitable or Legal Rights, Remedies or Defenses, Statutory or Procedural, as the Donor-Grantor-Beneficiary of the Defendant in the above stated case, filed in the above captioned court, doing business as KAREN IRENE LEWIS in this action before this court to invoke this Courts Special Equity Jurisdiction as a Court of Chancery, due to the fact that I am legally disabled within the limitations and constraints of civil procedures and concurrent jurisdictions, and the fact that there exists by operation of equitable estoppel a Constructive Trust with the opposing parties and/or actors in the above stated cases and in regards to the non-judicial foreclosure as Constructive Trustee's due to their acts of Fraud in Transfer, Conveying, and Conversion of the Decedent's Estate, Real Estate and Loan Documents including but not limited to the Deed of Trust and Promissory Note, acts of undue Influence, breach of

fiduciary duty, failure to disclose, fraudulent and negligent misrepresentation, tortuous interference with inheritance rights, abuse of process, tortuous misfeasance and nonfeasance, and Conspiracy to defraud.

**29)** Such causes of action also will support a claim for equitable relief. That these proceedings are counter to equity and as such it could irreparably damage rights to title, land, property and interest on a Private Trust now established by Special Deposit before this court, because Courts of Special Equity have exclusive jurisdiction over Private Trusts and Special Deposits, it is therefore only by invoking this Court of Special Equity by Special Deposit from which just relief may be granted me by my Motion or Application for the demanded orders to show cause;

**30)** Notice is hereby given that the Movants in the above stated case and this Court as a Court of Special Equity in Chancery, that this Notice of Removal is being made by Special Deposit to regain Legal and Equitable title of Declarant as the Beneficiary of the Deed of Trust and Estate by the merging of Legal and Equitable title by the re-recording of the Deed of Trust as the Donor-Grantor-Beneficiary and as a Special Deposit. As it was not the intent or purpose of the Declarant to enter into an unconscionable or fraudulent transaction of contract with those parties;

**31)** Respectfully submitted by Special Deposit this Motion or Application is being made on the following grounds and is supported by the attached Memorandum of Points & Authorities in support thereof:

## MEMORANDUM OF POINTS AND AUTHORITIES:

**1.** One of the most deeply rooted principles in American jurisprudence is the concept of due process of law, which is enshrined in the Fifth Amendment to the U.S. Constitution: **"No person**

**shall . . . be deprived of life, liberty, or property, without due process of law."** The core procedural requirements of due process of law are "notice" and "hearing." Additionally, the accused also has the right to use the subpoena power of the court (i.e., "compulsory process") to force favorable witnesses to come to court to provide evidence on his behalf.

**2.** This case involves the wrongful conveyance of real property in violation of the Petitioner's due process rights, the Petitioner has been denied lawful notices, she has been denied a fair hearing and denied discovery and denied the value of replevin of certain underlying facilities that were not knowingly abandoned to any party, and thus remain callable by force of equitable estoppel and the above stated Special Deposit of Constructive Trust, ab initio;

**3.** The United States District Court has the power and authority as a Special Court of Equity in Chancery by Special Deposit and upon a proper showing by the Declarant to impose a Constructive Trust under Title 11 USC § 105

**4.** "Constructive Trust" is equitable remedy to prevent unjust enrichment and enforce restitution, under which one who wrongfully acquires property of another holds it involuntarily as constructive trustee, and trust extends to property acquired in exchange for that wrongfully taken. Coppinger v. Superior Court of Orange County (App. 4 Dist. 1982) 185 Cal. Rptr. 24, 134 Cal. App.3d 883. Trustee 91. When one acquires proceeds from sale of property belonging to another, imposition of constructive trust on proceeds is proper remedy. A & M Records, v. Heilman (App. 2 District).

**5.** Where property has been acquired in such circumstances that the holder of Legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee" (Beatty v. Guggenheim Exploration Co., 225 NY 380, 386 [1919]).

**6.** CALIFORNIA CIVIL CODE §§ 222.3 AND 222.4 AUTHORIZES THE IMPOSTION OF A CONSTRUCTIVE TRUST UNDER STATE LAW.

a. § 222.3 One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner.

b. § 222.4 One who gains a thing by fraud accident, mistake, undue influence, the violation of a trust, or other wrongful act, is unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.

**7.** ACTUAL and CONSTRUCTIVE FRAUD CALIFORNIA CIVIL CODE §§ 1571-1575

a. §1571. Fraud is either actual or constructive

b. §1572. Actual fraud within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

i. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true, though he believes it to be true.

ii. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true.

iii. The suppression of that which is true, by one having Knowledge or belief of the fact.

iv. A promise made without any intention of performing it, or,

v. Any other act fitted to deceive.

**8.** § 1573. Constructive fraud consists:

a. In any breach of duty which, without an actual fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or

b. In any such act or omission as the law specially declares to Be fraudulent, without respect to actual fraud

**9.** § 1574. Actual fraud is always a question of fact and § 1575. Undue Influence consists:

a. In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him:

b. In taking an unfair advantage of another's weakness of mind; or

c. In taking a grossly oppressive and unfair advantage of another's necessities or distress.

**10. SECTIONS OF THE CALIFORNIA PROBATE CODE I SUPPORT OF IMPOSTION OF CONSTRUCTIVE TRUST**

§ 1500.3

(a) Nothing in this division affects the substantive law relating to constructive or resulting trusts.

(b) The repeal of Title 8 (commencing with Section 2215) of Part 4 of Division 3 or the Civil Code by chapter 820 of the Statutes of 1986 was not intended to alter the rules applied by the courts to fiduciary and confidential relationships, except as to express trusts govern by this division.

(c) Nothing in this division or in Section 82 is intended to prevent the application of all or part of the principles or procedures of this division to an entity or relationship that is excluded from the definition of "Trust" provided by Section 82 where these principles or procedures are applied pursuant to statutory or common law principles, by court or rule, or by contract.

**11.** I, karen irene, do hereby Declare, under penalty of perjury under the laws of the United States of America and the State of California, that the foregoing is true, correct, complete and certain to the best of my first hand knowledge, understanding and belief.

Respectfully Submitted and Executed on this seventeenth day of February two thousand seventeen at Oakland, California.

KAREN IRENE LEWIS, By:

Karen irene

karen irene, House of Lewis,
Authorized Representative

**VERIFICATION OF THE FACTS by real party of interest**

STATE OF CALIFORNIA, COUNTY OF ALAMDEA

I am submitting this "Petition for Removal of State of California Superior Court, County of Alameda **CASE NUMBER RG16838956**" for filing into the above-entitled court and have read the foregoing document and know its contents;

I am a party to this action as Real Party in Interest and Authorized Representative for the named Defendant. The matters stated in the foregoing document are true, correct, complete and certain of my own knowledge, and as to those matters that are stated on information and belief, and as to those matters, I believe them to be true.

Executed on the seventeenth day of February two thousand seventeen. I further verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

karen irene

karen irene, House of Lewis

SUM-130

# SUMMONS
## (CITACION JUDICIAL)
### UNLAWFUL DETAINER—EVICTION
### (RETENCIÓN ILÍCITA DE UN INMUEBLE—DESALOJO)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED
FILED
ALAMEDA COUNTY

CLERK OF THE SUPERIOR COURT

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):*** JON LEWIS aka JONATHAN LEWIS aka JONATHAN ANTHONY, KAREN I. LEWIS, PAUL JAMES COPPOCK aka PAUL JAMES, and DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):*** CROWD FUND INVESTMENT GROUP LLC

You have 5 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. (To calculate the five days, count Saturday and Sunday, but do not count other court holidays. If the last day falls on a Saturday, Sunday, or a court holiday then you have the next court day to file a written response.) A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*Tiene 5 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. (Para calcular los cinco días, cuente los sábados y los domingos pero no los otros días feriados de la corte. Si el último día cae en sábado o domingo, o en un día en que la corte esté cerrada, tiene hasta el próximo día de corte para presentar una respuesta por escrito). Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California* (www.sucorte.ca.gov), *en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services,* (www.lawhelpcalifornia.org), *en el Centro de Ayuda de las Cortes de California,* (www.sucorte.ca.gov) *o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

1. The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
1225 FALLON STREET, OAKLAND, CA 94612

CASE NUMBER: *(Número del caso):* RG16838956

2. The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
JONATHAN SEIGEL (State Bar # 168224) Phone No.: (415) 491-8900
SCHEER LAW GROUP, LLP, 155 N. REDWOOD DRIVE, SUITE 100, SAN RAFAEL, CA 94903 Fax No.: (415) 491-8910

3. *(Must be answered in all cases)* An **unlawful detainer assistant (Bus. & Prof. Code, §§ 6400–6415)** [X] did **not** [ ] did for compensation give advice or assistance with this form. *(If plaintiff has received* ***any*** *help or advice for pay from an unlawful detainer assistant, complete item 6 on the next page.)*

Date: *(Fecha)* NOV 15 2016 Chad Finke Clerk, by *(Secretario)* Asal Sponsel., Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

4. **NOTICE TO THE PERSON SERVED:** You are served
   a. [X] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of *(specify):*
   c. [ ] as an occupant
   d. [ ] on behalf of *(specify):*
   under: [ ] CCP 416.10 (corporation) [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
   [ ] CCP 415.46 (occupant) [ ] other *(specify):*
5. [ ] by personal delivery on *(date):*



Exhibit A

LexisNexis® Automated California Judicial Council Forms

SUM-130

| PLAINTIFF *(Name)*: CROWD FUND INVESTMENT GROUP LLC | CASE NUMBER: |
|---|---|
| DEFENDANT *(Name)*: JON LEWIS aka JONATHAN LEWIS aka JONATHAN ANTHONY, et al. | |

6. **Unlawful detainer assistant** *(complete if plaintiff has received any help or advice for pay from an unlawful detainer assistant)*:
   a. Assistant's name:
   b. Telephone no.:
   c. Street address, city, and zip:

   d. County of registration:
   e. Registration no.:
   f. Registration expires on *(date)*:



*LexisNexis® Automated California Judicial Council Forms*

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
JONATHAN SEIGEL (Bar # 168224)
SCHEER LAW GROUP, LLP
155 N. REDWOOD DRIVE, SUITE 100
SAN RAFAEL, CA 94903
TELEPHONE NO.: (415) 491-8900 FAX NO.: (415) 491-8910
ATTORNEY FOR (Name): CROWD FUND INVESTMENT GROUP LLC, Plaintiff

FOR COURT USE ONLY

ENDORSED
FILED
ALAMEDA COUNTY
CLERK OF THE SUPERIOR COURT

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 FALLON STREET
MAILING ADDRESS:
CITY AND ZIP CODE: OAKLAND 94612
BRANCH NAME:

CASE NAME:
CROWD FUND INVESTMENT GROUP LLC vs JON LEWIS aka JONATHAN LEWIS aka JONTHAN ANTHONY, et al.

# CIVIL CASE COVER SHEET

☐ Unlimited (Amount demanded exceeds $25,000)
☒ Limited (Amount demanded is $25,000 or less)

Complex Case Designation
☐ Counter ☐ Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: RG16838956
JUDGE:
DEPT:

FILE BY FAX

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☒ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. ☒ monetary b. ☒ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify)*: ONE (1)
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 15, 2016
JONATHAN SEIGEL
(TYPE OR PRINT NAME)
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller
    - Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

COPY

SPENCER P. SCHEER #107750
JOSHUA L. SCHEER #242722
REILLY D. WILKINSON #250086
JONATHAN SEIGEL #168224
ALEXANDRIA C. CARRAHER #299258
SCHEER LAW GROUP, LLP
155 N. REDWOOD DRIVE, SUITE 100
SAN RAFAEL, CA 94903
Telephone: (415) 491-8900
Facsimile: (415) 491-8910
CF.400-U003S

Attorneys for Plaintiff
CROWD FUND INVESTMENT GROUP LLC

ENDORSED
FILED
ALAMEDA COUNTY

CLERK OF THE SUPERIOR COURT

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| CROWD FUND INVESTMENT GROUP LLC,<br><br>Plaintiff,<br><br>vs.<br><br>JON LEWIS aka JONATHAN LEWIS aka JONATHAN ANTHONY, KAREN I. LEWIS; PAUL JAMES COPPOCK aka PAUL JAMES; and DOES 1-50, inclusive,<br><br>Defendant(s). | Case No.: RG16838956<br><br>COMPLAINT FOR UNLAWFUL DETAINER – LIMITED<br><br>Action based on Code of Civil Procedure Section 1161a<br><br>[Amount in controversy does not exceed $2,500]<br><br>FILE BY FAX |

Plaintiff complains of Defendants and for cause of action alleges:

1. Plaintiff, CROWD FUND INVESTMENT GROUP LLC, is a limited liability company authorized to do business and commence legal proceedings in the State of California.

2. Defendants JON LEWIS aka JONATHAN LEWIS aka JONATHAN ANTHONY, KAREN I. LEWIS and PAUL JAMES COPPOCK aka PAUL JAMES at all times herein mentioned resided in the State of California, County of Alameda.

3. The true names and capabilities, whether individual, corporate, associate or otherwise, of the Defendants named herein as Does 1-50, inclusive, and each of them, are unknown to Plaintiff, who therefore sues said Defendants by their fictitious names under Code of Civil Procedure Section 474. Plaintiff asks leave of the Court to amend its Complaint to include the true names and capacities of said Defendants when the same have been ascertained.

4. Plaintiff is the owner of and entitled to immediate possession of the real property in Alameda County, California, which is located at **3012 Partridge Avenue, Oakland, California, 94605** (the "Property").

5. Plaintiff owns said Property by virtue of a foreclosure sale duly held pursuant to the power under the Deed of Trust ("Deed of Trust") executed and delivered by Defendants JON LEWIS aka JONATHAN LEWIS aka JONATHAN ANTHONY and KAREN I. LEWIS that occurred as a result of a default under the Deed of Trust. A copy of the Deed of Trust is attached hereto as Exhibit "1."

6. At the time and place noticed for Trustee's Sale, the Property was sold and a corresponding Trustee's Deed was given to Plaintiff, thereby duly perfecting Plaintiff's title to the Property. A copy of said Trustee's Deed is attached hereto marked Exhibit "2" and made a part hereof.

7. Plaintiff is informed and believes and thereon alleges that Defendant PAUL JAMES COPPOCK aka PAUL JAMES occupies the Property along with Defendants JON LEWIS aka JONATHAN LEWIS aka JONATHAN ANTHONY and KAREN I. LEWIS.

8. On October 14, 2016, Defendants JON LEWIS aka JONATHAN LEWIS aka JONATHAN ANTHONY and KAREN I. LEWIS and "All Persons in Possession" were served with a written Notice for Possession. A true copy of said notice and Proof of Service thereof, are attached hereto as Exhibit "3", and are incorporated by reference herein as though fully set forth.

9. More than thirty (30) days have elapsed since the service of said Notice and Defendants have failed and refused to deliver up possession of the Property.

9. Defendants continue in possession of the Property without Plaintiff's permission or consent.

10. The reasonable value of the use and occupancy of the Property is the sum of $125.00 per day, and damage to the Plaintiff caused by Defendants' unlawful detention thereof has accrued at said rate since November 15, 2016 and will continue to accrue at said rate so long as Defendants remain in possession of the Property.

WHEREFORE, Plaintiff prays judgment against Defendants and each of them for:

1. Restitution of the Property;

2. Damages at the rate of $125.00 per day from November 15, 2016 for each day that the Defendants continue in possession of the Property,

3. Code of Civil Procedure Section 1174(b) statutory damages of up to six hundred dollars ($600.00); and

4. Costs herein, attorney's fees and further relief as is proper.

Dated: November 15, 2016

SCHEER LAW GROUP, LLP

By: ______________________

JONATHAN SEIGEL
Attorneys for Plaintiff

# VERIFICATION

I have read the foregoing COMPLAINT FOR UNLAWFUL DETAINER and know its contents.

[ ] I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

[ X ] I am [ ] an Officer [ ] a partner [ X] a member of CROWD FUND INVESTMENT GROUP LLC, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

[ ] I am informed and believe, and on that ground allege that the matters stated in the foregoing document are true.

[ X] The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

[ ] I am one of the attorneys for ______________, a party to this action. Such party is absent from the county aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Date: November 15, 2016

DEREK TJOE

# EXHIBIT "1"

Fidelity National Title

2003508013 08/27/2003 08:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE: 48.00

14 PGS

FIDELITY NATIONAL TITLE
ESCROW NO: 132449
ORDER NO: 132449

RECORDING REQUESTED BY:
After Recording Return To:
FLAGSTAR BANK, FSB
ATTN: FINAL DOCUMENTS, MAIL STOP W-530-3
5151 CORPORATE DRIVE
TROY, MI 48098

Title Order No.: 132449
Escrow No.: 132449
LOAN #: 999579405

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN 1000525-9995794055-0

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated AUGUST 21, 2003, together with all Riders to this document.

(B) "Borrower" is JON LEWIS AND KAREN I. LEWIS, HUSBAND AND WIFE AS JOINT TENANTS.

Borrower is the trustor under this Security Instrument.

(C) "Lender" is FLAGSTAR BANK, FSB.

Lender is a FEDERALLY CHARTERED SAVINGS BANK organized and existing under the laws of THE UNITED STATES OF AMERICA. Lender's address is 5151 CORPORATE DRIVE, TROY, MI 48098.

LOAN #: 999579405

(D) "Trustee" is JOAN H. ANDERSON.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) **"Note"** means the promissory note signed by Borrower and dated AUGUST 21, 2003. The Note states that Borrower owes Lender ****THREE HUNDRED TWENTY TWO THOUSAND FIVE HUNDRED AND NO/100 ************************************************************ Dollars (U.S. $322,500.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than SEPTEMBER 1, 2033.
(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[ ] Adjustable Rate Rider
[ ] Balloon Rider
[ ] 1-4 Family Rider
[ ] Condominium Rider
[ ] Planned Unit Development Rider
[ ] Biweekly Payment Rider
[ ] Second Home Rider
[ ] Other(s) [specify]

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) **"Escrow Items"** means those items that are described in Section 3.
(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY LOAN #: 999579405

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of ALAMEDA [Name of Recording Jurisdiction]:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

AP #: 040A-3423-041

which currently has the address of 3012 PARTRIDGE AVENUE, OAKLAND, [Street] [City]

California 94605 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender

may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower

LOAN #: 999579405

any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan..

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

LOAN #: 999579405

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect

LOAN #: 999579405

its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.


© 1999-2002 Online Documents, Inc.

LOAN #: 999579405

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can

LOAN #: 999579405

agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay

all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

LOAN #: 9995579405

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS: Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

LOAN #: 999579405

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_______________________________ (Seal)
JON LEWIS

_______________________________ (Seal)
KAREN I. LEWIS

State of CALIFORNIA

County of: Alameda

On 8-22-03, before me, Brian R. Dattilo, personally appeared Jon Lewis and Karen Lewis personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

BRIAN R. DATTILO
Comm. # 1432420
NOTARY PUBLIC-CALIFORNIA
Alameda County
My Comm. Expires July 26, 2007

_______________________________


© 1999-2002 Online Documents, Inc.

# ILLEGIBLE NOTARY SEAL OF DECLARATION

## (Government Code 27361.7)

I declare under penalty of perjury that the notary seal on the document, to which this statement is attached, reads as follows:

Name of Notary: BRIAN R. DAMILLO

Commission Number: 1432420

Notary Public State: CA

County of Commission: ALAMEDA

My Commission Expires: 7-26-07

Signature of Declarant: ______________

Print Name of Declarant: Ebony Sta. Maria

City & State of Declarant: Pleasanton, California

Date Signed: 2-26-03

Escrow No. 132449-RJS
Title Order No. 00132449

# EXHIBIT "ONE"

Commencing at the intersection of the southern line of Partridge Avenue, as described in the Deed of Dedication to the City of Oakland, filed May 27, 1924, book 701, page 332, Alameda County Records; with the northeastern line of Ney Avenue, as established by Deed to the City of Oakland, recorded May 27, 1924, book 737, page 148, Alameda County Records; thence along said southern line as follows: from a tangent which bear south 83° 16' 15" east on the arc of a curve to the left, having a radius of 150 feet, a distance of 59.81 feet north 73° 53' east 220.87 feet on the arc of a tangent curve to the right having a radius of 200.40 feet, a distance of 174.79 feet south 56° 08' 30" east 53.47 feet on the arc of tangent curve to the left having a radius of 120 feet, a distance of 42.59 feet; thence leaving said southern line south 8° 30' 40" west 128 feet to the actual point of beginning; running thence south 8° 30' 40" west 80.83 feet; south 54° 53' 30" west 68 feet; north 35° 06' 30" west 50 feet; north 54° 53' 30" east 40 feet; north 64° 22' west 57.31 feet and north 28° 45' 15" east 198.42 feet to said southern line of Partridge Avenue; thence along the last named line easterly 10 feet; thence south 28° 45' 15" west 120 feet to the southern line of the land described in the deed to Lloyd Baloqh, recorded September 25, 1938, book 3962, page 149, Alameda County Records and thence along the last named line southerly 77 feet to the actual point of beginning.

Being that certain parcel of land described in the deed by Lloyd Baloqh to James Carson, et ux., recorded September 14, 1939, book 3789, page 382, Series No. Kk-044157, Alameda County Records.

Assessor's Parcel No: 040A-3423-041

**EXHIBIT "2"**

Recording requested by:
CROWD FUND INVESTMENT GROUP
JUSTIN WONG

When Recorded Mail to and Mail Tax Statement to:
CROWD FUND INVESTMENT GROUP
JUSTIN WONG
2384 CONTRA COSTA BLVD #70
PLEASANT HILL, CA 94523

APN #: 040A-3423-041-00
Property Address:
3012 PARTRIDGE AVENUE
OAKLAND, CALIFORNIA 94605

TDUS20120187403810

2016265809 10/13/2016 01:32 PM
OFFICIAL RECORDS OF ALAMEDA COUNTY
STEVE MANNING
RECORDING FEE: 21.00
COUNTY TAX: 463.10
CITY TAX: 6315.00
3 PGS

COPY of document to be recorded
Has not been compared with Original

Space above this line for Recorder's use only

Trustee Sale No. : 20120187403810 Title Order No.: 1161021

# TRUSTEE'S DEED UPON SALE

The undersigned grantor declares:

1) The Grantee herein WAS NOT the foreclosing beneficiary
2) The amount of the unpaid debt together with cost was $388,758.41
3) The amount paid by the grantee at the trustee sale was $421,000.00
4) The documentary transfer tax is
5) Said property is in the city of OAKLAND

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP, as the duly appointed Trusteeunder the Deed of Trust hereinafter described, does hereby grant and convey, but without covenant or warranty, express or implied, to:

CROWD FUND INVESTMENT GROUP

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of Alameda, State of California, described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES.

RECITALS:

This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust dated 08/21/2003 and executed by JON LEWIS AND KAREN I. LEWIS, HUSBAND AND WIFE AS JOINT TENANTS, Trustor(s), and Recorded on 08/27/2003 as Instrument No. 2003508013 of official records of Alameda County, California, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the Office of the Recorder of said County, and such default still existed at the time of sale.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of a Sale have been complied with.

MAIL TAX STATEMENTS AS DIRECTED ABOVE



Scanned by CamScanner

Trustee Sale No. : 20120187403810 Title Order No.: 1161021

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of Trust, sold the herein described property at public auction on 09/30/2016. Grantee, being the highest bidder at said sale, became the purchaser of said property for the amount bid being 421,000.00 in lawful money of the United States, or by credit bid if the Grantee was the beneficiary of said Deed of Trust at the Time of said Trustee's Sale.

DATED: 10/10/2016

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP, as Trustee

Cheryl Asher

10/10/2016
DATED

State of TEXAS }
County of DALLAS }

On 10/10/2016 before me, Kellie C. Bridges Notary Public, personally appeared Cheryl Asher who is known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: Kellie C. Bridges (Seal)

My commission expires: 9/19/2018

KELLIE C. BRIDGES
ID # 7540734
Notary Public, State of Texas
My Commission Expires
09/19/2018



Scanned by CamScanner

Trustee Sale No. : 20120187403810 Title Order No.: 1161021

EXHIBIT "A"

COMMENCING AT THE INTERSECTION OF THE SOUTHERN LINE OF PARTRIDGE AVENUE, AS DESCRIBED IN THE DEED OF DEDICATION TO THE CITY OF OAKLAND, FILED MAY 27, 1924, BOOK 701, PAGE 332, ALAMEDA COUNTY RECORDS; WITH THE NORTHEASTERN LINE OF NEY AVENUE, AS ESTABLISHED BY DEED TO THE CITY OF OAKLAND, RECORDED MAY 27, 1924, BOOK 737, PAGE 148, ALAMEDA COUNTY RECORDS; THENCE ALONG SAID SOUTHERN LINE AS FOLLOWS: FROM A TANGENT WHICH BEAR SOUTH 83° 16' 15" EAST ON THE ARC OF A CURVE TO THE LEFT, HAVING A RADIUS OF 150 FEET, A DISTANCE OF 59.81 FEET NORTH 73° 53' EAST 220.87 FEET ON THE ARC OF A TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 200.40 FEET, A DISTANCE OF 174.79 FEET SOUTH 56° 08' 30" EAST 53.47 FEET ON THE ARC OF TANGENT CURVE TO THE LEFT HAVING A RADIUS OF 120 FEET, A DISTANCE OF 42.59 FEET; THENCE LEAVING SAID SOUTHERN LINE SOUTH 8° 30' 40" WEST 128 FEET TO THE ACTUAL POINT OF BEGINNING; RUNNING THENCE SOUTH 8° 30' 40" WEST 80.83 FEET; SOUTH 54° 53' 30" WEST 68 FEET; NORTH 35° 06' 30" WEST 50 FEET; NORTH 54° 53' 30" EAST 40 FEET; NORTH 64° 22' WEST 57.31 FEET AND NORTH 28° 45' 15" EAST 198.42 FEET TO SAID SOUTHERN LINE OF PARTRIDGE AVENUE; THENCE ALONG THE LAST NAMED LINE EASTERLY 10 FEET; THENCE SOUTH 28° 45' 15" WEST 120 FEET TO THE SOUTHERN LINE OF THE LAND DESCRIBED IN THE DEED TO LLOYD BALOCH, RECORDED SEPTEMBER 25, 1938, BOOK 3962, PAGE 149, ALAMEDA COUNTY RECORDS AND THENCE ALONG THE LAST NAMED LINE SOUTHERLY 77 FEET TO THE ACTUAL POINT OF BEGINNING.

BEING THAT CERTAIN PARCEL OF LAND DESCRIBED IN THE DEED BY LLOYD BALOCH TO JAMES CARSON, ET UX., RECORDED SEPTEMBER 14, 1939, BOOK 3789, PAGE 382, SERIES NO. KK-044157, ALAMEDA COUNTY RECORDS.

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**



Scanned by CamScanner

# EXHIBIT "3"

**Notice to Any Renters Living At 3012 Partridge Avenue, Oakland, California, 94605**

The attached NOTICE FOR POSSESSION means that your home was recently sold in foreclosure and the new owner plans to evict you.

You should talk to a lawyer NOW to see what your rights are. You may receive court papers in a few days. If your name is on the papers it may hurt your credit if you do not respond and simply move out.

Also, if you do not respond within five days of receiving the papers, even if you are not named in the papers, you will likely lose any rights you may have. In some cases, you can respond without hurting your credit. You should ask a lawyer about it.

You may have the right to stay in your home for 90 days or longer, regardless of any deadlines stated on any attached papers. In some cases and in some cities with a "just cause for eviction law," you may not have to move at all. But you must take the proper legal steps in order to protect your rights.

**How to Get Legal Help**

If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Internet Web site (www.lawhelpca.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

SPENCER P. SCHEER
JOSHUA L. SCHEER
REILLY D. WILKINSON
JONATHAN SEIGEL
ALEXANDRIA C. CARRAHER
MICHAEL D. IMFELD**

**OF COUNSEL

SCHEER LAW GROUP, LLP
ATTORNEYS AT LAW

RESPOND TO:

NORTHERN CALIFORNIA OFFICE

EMAIL:
FIRST LETTER OF USER NAME AND ENTIRE LAST NAME @SCHEERLAWGROUP.COM

NORTHERN CALIFORNIA OFFICE

155 N. REDWOOD DR., STE. 100
SAN RAFAEL, CA 94903
PHONE (415) 491-8900
FAX (415) 491-8910

SOUTHERN CALIFORNIA OFFICE

4340 VON KARMAN, STE.200
NEWPORT BEACH, CA 92660
PHONE (949) 263-8757

# NOTICE FOR POSSESSION

TO: JON LEWIS aka JONATHAN LEWIS aka JONATHAN ANTHONY, KAREN I. LEWIS and "ALL PERSONS IN POSSESSION" of the premises located at:

**3012 Partridge Avenue, Oakland, California, 94605**

NOTICE IS HEREBY GIVEN that:

1. Within three (3) days after service on you of this Notice, in the event you are the Trustor of the Deed of Trust described below, or an occupant of the above-described premises that is not a tenant or subtenant in possession of the premises as set forth in sections 2 or 3 below, or;

2. Within thirty (30) days after service on you of this Notice, in the event in the event you are a tenant or subtenant in possession of the above described premises, and any party to the Promissory Note that was secured by the Deed of Trust identified below occupies the premises, or

3. Within ninety (90) days after service on you of this Notice, in the event you are a tenant or subtenant in possession of the above described premises under a month-to-month lease, periodic tenancy or fixed-term residential lease entered into before transfer of the title at the foreclosure sale identified below and no party to the Promissory Note secured by the premises and foreclosed upon occupies the premises.

You are required to quit and deliver up possession of the premises to the undersigned or to SCHEER LAW GROUP, LLP, servicing agent, who is authorized to receive the same, or the undersigned will institute legal proceedings against you to recover possession of said premises and for rents or damages as provided by law.

You are required to quit and deliver up possession of said premises for the reason that they have been duly sold to the undersigned in accordance with Section 2924 of the Civil Code of the State of California, on or about September 30, 2016, under the power of sale contained in a Deed of Trust executed by you or by your predecessors in interest and recorded on or about August 27, 2003, recorded in the Official Records, Alameda County, California, and the title under sale has been duly perfected.

This Notice to you is given pursuant to the provisions of CCP §1161a, if you are the Trustor under the Deed of Trust or an occupant of the above-described premises that is not a tenant or subtenant in possession of the premises as set forth in section 3. This Notice is given pursuant to the provisions of CCP

§1161a and CCP §1161b and the Protecting Tenants at Foreclosure Act (PL 111-22), if you are a tenant or subtenant, in possession of the above described premises under a month-to-month lease, tenancy or fixed-term residential lease entered into before transfer of the title at the foreclosure sale identified below.

IMPORTANT NOTE: In the event that you occupy the Property under a written lease and you contend that you have made all required payments due under the lease, please provide a copy of the written lease and all rent receipts to the undersigned, if you assert the right to remain on the Property beyond the three (3) day notice period.

State law permits former occupants to reclaim abandoned personal property left at the former address of the occupant, subject to certain conditions. You may or may not be able to reclaim property without incurring additional costs, depending on the cost of storing the property and the length of time before it is reclaimed. In general, these costs will be lower the sooner you contact the owner of the property after being notified that property belonging to you was left behind after you moved out.

Dated: October 14, 2016

SCHEER LAW GROUP, LLP

BY: ______________________

JONATHAN SEIGEL
Attorneys for
CROWD FUND INVESTMENT GROUP
OWNER

**Cover Sheet To Notice for Possession To Any Renters On Property is attached.

## SPECIAL NOTICE

THE FOLLOWING NOTICE IS GIVEN TO YOU IN THE EVENT THAT THE FEDERAL FAIR DEBT COLLECTIONS ACT APPLIES TO THIS COMMUNICATION.

**The following statement provides you with notice of certain rights which you may have by law. Nothing in this statement modifies or changes the hearing date or response time specified in the attached documents or your need to take legal action to protect your rights in this matter.**

## CONSUMER DISCLOSURE

NOTICE: THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE. THE STATE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT AND THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT REQUIRE THAT, EXCEPT UNDER UNUSUAL CIRCUMSTANCES, COLLECTORS MAY NOT CONTACT YOU BEFORE 8 A.M. OR AFTER 9 P.M. THEY MAY NOT HARASS YOU BY USING THREATS OF VIOLENCE OR ARREST OR BY USING OBSCENE LANGUAGE. COLLECTORS MAY NOT USE FALSE OR MISLEADING STATEMENTS OR CALL YOU AT WORK IF THEY KNOW OR HAVE REASON TO KNOW THAT YOU MAY NOT RECEIVE PERSONAL CALLS AT WORK. FOR THE MOST PART, COLLECTORS MAY NOT TELL ANOTHER PERSON, OTHER THAN YOUR ATTORNEY OR SPOUSE, ABOUT YOUR DEBT. COLLECTORS MAY CONTACT ANOTHER PERSON TO CONFIRM YOUR LOCATION OR ENFORCE A JUDGMENT. FOR MORE INFORMATION ABOUT DEBT COLLECTIONS ACTIVITIES, YOU MAY CONTACT THE FEDERAL TRADE COMMISSION AT 1-877-FTC-HELP OR WWW.FTC.GOV.

Please be advised that if you notify CROWD FUND INVESTMENT GROUP's attorneys in writing within 30 days after receiving this Notice that all or a part of your obligation or judgment to CROWD FUND INVESTMENT GROUP is disputed, then CROWD FUND INVESTMENT GROUP's attorneys will mail to you a written verification of the obligations or judgment and the amounts owed to CROWD FUND INVESTMENT GROUP. In addition and upon your written request within 30 days after receiving this Notice, I will provide you with the name and address of the original creditor, if different from the current creditor.

Jonathan Seigel (SBN: 168224)
SCHEER LAW GROUP, LLP
155 N. Redwood Drive, Suite 100 San Rafael, CA 94903

TELEPHONE NO.: (415) 491-8900 FAX NO. (Optional): (415) 491-8910
E-MAIL ADDRESS (Optional):

FOR COURT USE ONLY

| PROOF OF SERVICE | HEARING DATE: | DAY: | TIME: | DEPT.: | Ref No. or File No.: CF.400-U003S |
|---|---|---|---|---|---|

AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION, AND SERVED COPIES OF THE:

Cover Sheet to Notice for Possession to Any Renter on Property;Notice for Possession;Special Notice/Consumer Disclosure .

NAME OF OCCUPANT: JON LEWIS

DATE OF SERVICE: October 14, 2016
TIME OF SERVICE: 12:34 PM

DATE OF MAILING: October 14, 2016
PLACE OF MAILING: Oakland, CA

ADDRESS OF PROPERTY: 3012 Partridge Avenue
Oakland, CA 94605
(HOME)

MANNER OF SERVICE:

By posting in a conspicuous place on the property therein described, there being no person of suitable age or discretion to be found at any known place of residence or business of said tenants. I thereafter mailed the copies to the person served, addressed as shown in above address, by first-class mail, postage prepaid, on October 14, 2016 from Oakland.

Fee for Service: 80.00
County: Alameda
Registration No.: 1014
INTERCEPTOR Legal Support
Service, Inc.
55 Santa Clara Ave.
Oakland, CA 94610
(510) 419-3940
Registered ALAMEDA COUNTY #855

I declare under penalty of perjury under the laws of the The State of California that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on October 18, 2016

Signature: ______________________
Granville Smith

982(a)(23)(New July 1, 1987)

PROOF OF SERVICE

Order#: P266960 /30DAY

Jonathan Seigel (SBN: 168224)
SCHEER LAW GROUP, LLP
155 N. Redwood Drive, Suite 100 San Rafael, CA 94903

TELEPHONE NO.: (415) 491-8900 FAX NO. (Optional): (415) 491-8910
E-MAIL ADDRESS (Optional):

FOR COURT USE ONLY

| PROOF OF SERVICE | HEARING DATE: | DAY: | TIME: | DEPT.: | Ref No. or File No.: CF.400-U003S |
|---|---|---|---|---|---|

AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION, AND SERVED COPIES OF THE:

Cover Sheet to Notice for Possession to Any Renter on Property;Notice for Possession;Special Notice/Consumer Disclosure

NAME OF OCCUPANT: KAREN I. LEWIS

DATE OF SERVICE: October 14, 2016
TIME OF SERVICE: 12:34 PM

DATE OF MAILING: October 14, 2016
PLACE OF MAILING: Oakland, CA

ADDRESS OF PROPERTY: 3012 Partridge Avenue
Oakland, CA 94605
(HOME)

MANNER OF SERVICE:
By posting in a conspicuous place on the property therein described, there being no person of suitable age or discretion to be found at any known place of residence or business of said tenants. I thereafter mailed the copies to the person served, addressed as shown in above address, by first-class mail, postage prepaid, on October 14, 2016 from Oakland.

Fee for Service: 35.00
County: Alameda
Registration No.: 1014
INTERCEPTOR Legal Support
Service, Inc.
55 Santa Clara Ave.
Oakland, CA 94610
(510) 419-3940
Registered ALAMEDA COUNTY #855

I declare under penalty of perjury under the laws of the The State of California that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on October 18, 2016

Signature: ______________
Granville Smith

Jonathan Seigel (SBN: 168224)
SCHEER LAW GROUP, LLP
155 N. Redwood Drive, Suite 100 San Rafael, CA 94903

TELEPHONE NO.: (415) 491-8900 FAX NO. (Optional): (415) 491-8910
E-MAIL ADDRESS (Optional):

FOR COURT USE ONLY

| PROOF OF SERVICE | HEARING DATE: | DAY: | TIME: | DEPT.: | Ref No. or File No.: CF.400-U003S |
|---|---|---|---|---|---|

AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION, AND SERVED COPIES OF THE:

Cover Sheet to Notice for Possession to Any Renter on Property;Notice for Possession;Special Notice/Consumer Disclosure

NAME OF OCCUPANT: ALL PERSONS IN POSSESSION

DATE OF SERVICE: October 14, 2016
TIME OF SERVICE: 12:34 PM

DATE OF MAILING: October 14, 2016
PLACE OF MAILING: Oakland, CA

ADDRESS OF PROPERTY: 3012 Partridge Avenue
Oakland, CA 94605
(HOME)

MANNER OF SERVICE:

By posting in a conspicuous place on the property therein described, there being no person of suitable age or discretion to be found at any known place of residence or business of said tenants. I thereafter mailed the copies to the person served, addressed as shown in above address, by first-class mail, postage prepaid, on October 14, 2016 from Oakland.

Fee for Service: 35.00
County: Alameda
Registration No.: 1014
INTERCEPTOR Legal Support Service, Inc.
55 Santa Clara Ave.
Oakland, CA 94610
(510) 419-3940
Registered ALAMEDA COUNTY #855

I declare under penalty of perjury under the laws of the The State of California that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on October 18, 2016

Signature: ____________________
Granville Smith

CP10.5

**NOTICE: EVERYONE WHO LIVES IN THIS RENTAL UNIT MAY BE EVICTED BY COURT ORDER. READ THIS FORM IF YOU LIVE HERE AND IF YOUR NAME IS NOT ON THE ATTACHED SUMMONS AND COMPLAINT.**

1. If you live here and you do not complete and submit this form, you may be evicted without further hearing by the court along with the persons named in the Summons and Complaint.
2. You must file this form within 10 days of the date of service listed in the box on the right hand side of this form.
   - **Exception:** If you are a tenant being evicted after your landlord lost the property to foreclosure, the 10-day deadline does not apply to you and you may file this form at any time before judgment is entered.
3. If you file this form, your claim will be determined in the eviction action against the persons named in the complaint.
4. If you do not file this form, you may be evicted without further hearing.
5. If you are a tenant being evicted due to foreclosure, you have additional rights and should seek legal advice immediately.

| | |
|---|---|
| CLAIMANT OR CLAIMANT'S ATTORNEY (*Name and Address*): TELEPHONE NO.:<br><br>ATTORNEY FOR (*Name*). | *FOR COURT USE ONLY* |
| NAME OF COURT: SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA<br>STREET ADDRESS: 1225 FALLON STREET<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: OAKLAND 94612<br>BRANCH NAME: | |
| Plaintiff: CROWD FUND INVESTMENT GROUP LLC<br>Defendant: JON LEWIS aka JONATHAN LEWIS aka JONATHAN ANTHONY, et al. | |
| **PREJUDGMENT CLAIM OF RIGHT TO POSSESSION** | CASE NUMBER: RG16838956 |
| **Complete this form only if ALL of these statements are true:**<br>**1. You are NOT named in the accompanying Summons and Complaint.**<br>**2. You occupied the subject premises on or before the date the unlawful detainer (eviction) complaint was filed. (The date is in the accompanying Summons and Complaint.)**<br>**3. You still occupy the subject premises.** | *(To be completed by the process server)*<br>DATE OF SERVICE:<br>*(Date that form is served or delivered, posted, and mailed by the officer or process server)* |

I DECLARE THE FOLLOWING UNDER PENALTY OF PERJURY:

1. My name is *(specify)*:
2. I reside at *(street address, unit no., city and ZIP code)*:

FILE BY FAX

3. The address of "the premises" subject to this claim is *(address)*:

4. On *(insert date)*: , the landlord or the landlord's authorized agent filed a complaint to recover possession of the premises. *(This date is in the accompanying Summons and Complaint.)*
5. I occupied the premises on the date the complaint was filed *(the date in item 4)*. I have continued to occupy the premises ever since.
6. I was at least 18 years of age on the date the complaint was filed *(the date in item 4)*.
7. I claim a right to possession of the premises because I occupied the premises on the date the complaint was filed *(the date in item 4)*.
8. I was not named in the Summons and Complaint.
9. I understand that if I make this claim of possession, I will be added as a defendant to the unlawful detainer (eviction) action.
10. *(Filing fee)* I understand that I must go to the court and pay a filing fee of $ or file with the court an "Application for Waiver of Court Fees and Costs." I understand that if I don't pay the filing fee or file the form for waiver of court fees, I will not be entitled to make a claim of right to possession.

(Continued on reverse)

CP10.5

| Plaintiff: CROWD FUND INVESTMENT GROUP LLC<br>Defendant: JON LEWIS aka JONATHAN LEWIS aka JONATHAN ANTHONY, et al. | CASE NUMBER: |
|---|---|

11. If my landlord lost this property to foreclosure, I understand that I can file this form at any time before judgment is entered, and that I have additional rights and should seek legal advice.
12. I understand that I will have *five days* (excluding court holidays) to file a response to the Summons and Complaint after I file this Prejudgment Claim of Right to Possession form.

**NOTICE: If you fail to file this claim, you may be evicted without further hearing.**

13. **Rental agreement.** I have *(check all that apply to you):*
   a. ☐ an oral or written rental agreement with the landlord.
   b. ☐ an oral or written rental agreement with a person other than the landlord.
   c. ☐ an oral or written rental agreement with the former owner who lost the property to foreclosure.
   d. ☐ other *(explain):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

WARNING: Perjury is a felony punishable by imprisonment in the state prison.

Date:

(TYPE OR PRINT NAME) ▶ (SIGNATURE OF CLAIMANT)

**NOTICE:** If you file this claim to possession, the unlawful detainer action against you will be determined at trial. At trial, you may be found liable for rent, costs, and, in some cases, treble damages.

## — NOTICE TO OCCUPANTS —

**YOU MUST ACT AT ONCE if all the following are true:**

1. **You are NOT named in the accompanying Summons and Complaint.**
2. **You occupied the premises on or before the date the unlawful detainer (eviction) complaint was filed.**
3. **You still occupy the premises.**

You can complete and SUBMIT THIS CLAIM FORM WITHIN 10 DAYS from the date of service (on the form) at the court where the unlawful detainer (eviction) complaint was filed. If you are a tenant and your landlord lost the property you occupy through foreclosure, this 10-day deadline does not apply to you. You may file this form at any time before judgment is entered. You should seek legal advice immediately.

If you do not complete and submit this form (and pay a filing fee or file a fee waiver form if you cannot pay the fee), YOU WILL BE EVICTED.

After this form is properly filed, you will be added as a defendant in the unlawful detainer (eviction) action and your right to occupy the premises will be decided by the court. *If you do not file this claim, you may be evicted without a hearing.*

ENDORSED FILED ALAMEDA COUNTY
JAN 26 2017
CLERK OF THE SUPERIOR COURT
By D. CLEMONS Deputy

karen irene, House of Lewis
Real Party in Interest
Third Party Intervenor
c/o 484 Lake Park Ave #117
city Oakland, California state of the Union
510-495-5699

KAREN I. LEWIS, Defendant

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF ALAMEDA**

| | |
|---|---|
| CROWD FUND INVESTMENT GROUP LLC,<br><br>Plaintiff,<br><br>vs.<br><br>JON LEWIS aka JONATHAN LEWIS, aka JONATHAN ANTHONY, et al.,<br><br>Defendants. | **Case No. RG16838956**<br><br>**NOTICE OF MOTION AND MOTION TO QUASH SERVICE OF SUMMONS AND COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF karen irene, IN SUPPORT**<br><br>**VERIFIED**<br><br>Date: 2/2/17<br>Time: 9:00am<br>Department: 511<br>Reservation #: 1820968 |

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN that** on February 2nd, 2017 at 9 a.m. or as soon thereafter as the matter can be heard in Department 511 of the above-entitled court, located at 1225 Fallon Street, Oakland, California 94612, KAREN I. LEWIS ("Movant"), named Defendant in this matter, will move the



Exhibit B

Court to quash and render null, void and ineffective the service of Summons and Complaint in this unlawful detainer action. This motion is made through Movant's special appearance.

This Motion is made on the grounds that the Court lacks jurisdiction over the Movant, because Movant was not properly and legally served with a copy of the Summons and Complaint.

In addition, the Plaintiff's notice to Movant is defective for failure to comply with provisions of California Code of Civil Procedure Code of Civil Procedure, Sections 14, 153, 412.20(a), §1161 and 1162 and Govt. Code, Sec. 68076.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of karen irene, House of Lewis, on the records and the file herein and on such evidence as may be presented at the hearing of this Motion.

Dated: January 25, 2017

KAREN I. LEWIS
By:

Karen irene

karen irene,
House of Lewis

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF FACTS

The following Plain Statement of Facts is herewith made by karen irene, House of Lewis, as Real Party in Interest holding beneficial rights and equitable interests herein, and does herewith set forth the following as true, correct, complete and certain as Third Party Intervener without grant of jurisdiction or consent to these proceedings, to wit:

1. SUMMONS is legally void on its face, as **Exhibit E**, annexed copy of allegedly served document for Unlawful Detainer case number RG16838956 shows it is absent mandated Superior court seal. The seal of a lawful Court is what provides the court the power to compel. This is settled in both Federal and state law and affirmed in the rules and codes that direct both jurisdictions. The law is further affirmed in five high court cases annexed herein and have not been overturned. **Exhibit D**

[cf. State Court: Failure to properly serve the summons, the "SUMMONS" means its fatally defective on its face, for lack of legislatively-mandated superior court seal affixed thereto (see: Code of Civil Procedure, Sections 14, 153, 412.20(a) and Govt. Code, Sec. 68076); The three legal documents are set forth in the Code of Civil Procedure, Sec. 153 and are: (1) a writ; (2) a summons; (3) a warrant of arrest. Section 68076. (Amended by Stats. 2007, Ch. 738, Sec. 15.) Cite as: Cal. Gov't. Code §68076. The seals of the superior courts shall:

(a)Be circular.

(b)Be not less than one and one-fourth inches in diameter.

(c)Have in the center any word, words, or design adopted by the judges of the superior court.

(d)Have inscribed around the central words or design "Superior Court of California, County of [____]," inserting the name of the county. The seal of any such court, which has been adopted before April 1, 1880, shall be the seal of such court until another is adopted.

2. That the name of the owners of record in the property in question are JONATHAN ANTHONY LEWIS TRUST and KAREN IRENE LEWIS TRUST; and

3. That karen irene, House of Lewis, is a living woman, and not the *ens legis* United States franchise KAREN IRENE LEWIS (AKA KAREN I. LEWIS) and is here in this court only by special ministerial visitation to protect and preserve all legal and equitable rights in the subject property and is here as priority agent for the KAREN IRENE LEWIS TRUST and Authorized Representative for the named Defendant and states that neither the Defendant nor the legal title holders were named or served either by personal delivery or by substituted service **A true and correct copy of the County Recorder's record is attached hereto as Exhibit A**; and

4. That karen irene, House of Lewis, is priority agent for the KAREN IRENE LEWIS TRUST and Authorized Representative for the named Defendant and states that neither the Defendant nor the legal title holders were served either by personal service delivery or by No known Place or Time Motion of Secondary Service; and

5. That karen irene, House of Lewis, is priority agent for the KAREN IRENE LEWIS TRUST and Authorized Representative for the named Defendant and states that neither the Defendant nor the legal title holders were served either by personal service delivery or by No known Place or Time Notice of Motion or Motion; and

6. That karen irene, House of Lewis, is priority agent for the KAREN IRENE LEWIS TRUST and Authorized Representative for the named Defendant and states that neither the Defendant nor the legal title holders were served either by personal service delivery or by No known Place or Time, Power of the Sale of the Real-Location; and

7. Delivery of the DEED with intent to pass title is a question of fact and title does not pass nor the mortgage take effect upon the after-acquired property, either at law or in equity, unless possession is taken under it, and further, that any conveyance of rights, title or interest conveyed by purported trustee sale only passes rights, title and interest to the lien interests in the deed of trust and not title to the subject property; and

8. CROWD FUND INVESTMENT GROUP LLC ("Plaintiff") filed an action for Unlawful Detainer on November 15, 2015. The unlawful detainer action concerns that certain real property commonly known as 3012 Partridge Avenue, Oakland, California 94605 ("the subject property"), which said property is only of legal title character and does not in any way have standing to claim the land upon which it sits, which has

been perfected by proper, lawful and equitable Claim of Right and Free Hold by the living man, jonathan anthony, which stands perfected and fully adjudicated in county Alameda; and

9. To date, neither KAREN I. LEWIS ("MOVANT") nor KAREN IRENE LEWIS TRUST, nor JONATHAN ANOTHONY LEWIS TRUST have been properly and effectively served with Summons and Complaint in this unlawful detainer action. On Thursday, December 1, 2016, karen irene was shown a collection of documents by other private parties of interest (private dwellers by private contractual agreements) of the subject property. Among the papers was a document entitled Application Re: Posting of Summons and Complaint Granted, which appeared to be a court document, signed by Judge Kimberly E. Colwell. The document ordered that service of Summons and Complaint would be effected " . . . by posting the Summons on the premises in a manner most likely to give actual notice to the Defendant(s) and by mailing a copy of the Summons and Complaint by certified mail to Defendant(s) at the above address." **A true and correct copy of the Order is attached hereto as Exhibit B.**

10. The subject property is not part of the federal zone and does not receive US mail service. Plaintiff's affidavit by Therese Martin in their prior request for dismissal shows Plaintiff has been made aware of the correct mailing address. **A true and correct copy of the Proof of Service is attached hereto as Exhibit C.**

## II. A DEFENDANT MAY FILE A MOTION TO QUASH WHEN THE COURT LACKS JURISDICTION OVER THE DEFENDANT

11. Code of Civil Procedure § 418.10(a)(1), read with § 1167, provides that a Motion to Quash Service of Summons may be filed on the grounds that the Court lacks jurisdiction over the Defendant(s). The Court has no jurisdiction over an improperly served party that does not voluntarily appear. A judgment entered without jurisdiction over the party subject to judgment is void. Sternbeck v. Buck (1957) 148 Cal App 2d 829, 834. Mere knowledge of the proceeding, without a voluntary appearance by the improperly served party is insufficient for a court to assert jurisdiction over that party. Coulston v. Cooper (1966) 245 Cal App 2d 866, 870.

## III. THE PLAINTIFF'S SUMMONS AND COMPLAINT ARE DEFECTIVE BECAUSE MOVANT WAS IMPROPERLY SERVED

### A. A Motion to Quash is the effective and proper method for challenging the sufficiency of an Unlawful Detainer Complaint.

12. Although Code of Civil Procedure § 1170 provides that a Defendant can either "answer or demurrer," the California Court of Appeals, in Delta Imports v. Municipal Court (1983) 146 Cal App 3d 1033, 1036, held that "a motion

to quash service is the only method by which the Defendant can test whether the complaint states a cause of action for *unlawful detainer* . . ." While this position has not been explicitly endorsed by the California Supreme Court, Greener v. Workers' Compensation Appeals Board (1993) 6 Cal 4th 1028, 2036, (citing Delta Imports) acknowledges (in dicta) that this is the currently acceptable practice in unlawful detainer cases.

**B. Code of Civil Procedure §§ 415.45 is the method of service ordered by the Court.**

13. The Court, by its order in the herein action, set forth that Movant was to be served by posting and mailing (the "nail and mail" method). Code of Civil Procedure § 415.45);

**C. Plaintiff failed to serve Movant as ordered by the Court.**

14. The "nail and mail" method requires that the Plaintiff show the Court, through reasonably diligent efforts, that the Defendants cannot be served in any other manner than by publication. (Code Civ. Proc., § 415.45 a). There is no evidence that any such diligent efforts were made in any attempts to make service proper.

15. Here, as of the time of filing this Notice and Motion, Movant has not received a copy of the Summons and Complaint in the mail. Accordingly, there has been no valid

service by posting and mailing and, therefore, the Complaint must be dismissed without leave to amend.

**D. Plaintiff failed to evidence reasonable diligence in service of process**

16. The record shows no supporting affidavits from any process servers attempting to serve Defendants. According to Code of Civil Procedure § 417.10 reasonable diligence requires three documented attempts, noting date, time, and result of action. The only record of attempted service in Plaintiff's paperwork is based on the first, dismissed, UD Case No. RG16835721. No record for service of process noted for second UD Case No. RG16838956, filed 11/15/16.

17. The question arises however, as to why the Plaintiff's first UD Case No. RG16835721 was dismissed when the court already had Defendant's answers or other special responses filed? It shall be further noted that Defendants were not provided notice of order granting Plaintiff's dismissal for Case No. RG16835721.

18. The additional question arises as to what Plaintiff's hidden agenda intends by the undisclosed dismissal of UD Case No. RG16835721 and subsequent immediate order for post and mail service without proper documentation?

**E. Plaintiff's time table lacks a logical basis in fact proving reasonable diligence was utilized to serve Defendants**

19. The first UD Case No. RG16835721, was dismissed on November 7th without notice to Defendants. Plaintiffs then continued their trespass on the property twice (included willful damage caused) within the same and next weeks, on the 11/10/16 and 11/11/16 and then again on 11/17/16 and 11/18/16. This continued harassment outside the judiciary constituted a reasonable fear for Defendant's safety and threat of harm necessitating application for a TRO for agents of CROWD FUND INVESTMENT GROUP LLC operating outside judicial bounds, Case No. HG16839832, and the granting of same on 11/23/16. No attempted service of process was evidenced during these trespasses when agents for Plaintiff had a clear opportunity to do so. This indicates artifice and manipulation and potential fraud upon this court.

**F. Improper service is strictly construed against the Plaintiff under California law.**

20. California Courts have explicitly held that service of process is strictly construed against the Plaintiff. In <u>Bishop v. Silva</u> (1991) 234 Cal App 3d 1317, 1321, the Court, quoting the California Law Revision Commission, noted that "[t]he excuse of impossibility, impracticability, or futility should be strictly construed in light of the need to give a Defendant adequate notice of

the action so that the Defendant can take necessary steps to preserve evidence.", quoting Cal. Law Rev. Comm. Reports 905 (1984).)

21. Unlawful Detainer is a summary proceeding meaning that the normal civil procedures and deadlines do not apply. The unlawful detainer statues, CCP §§ 1161 - 1179a, provide for expedited response times for tenants, limited discovery and trial calendar precedence. Because of the summary nature of unlawful detainer proceedings, California courts require that landlords must strictly comply with all statutory requirements when pursuing an unlawful detainer. Kwok v. Bergen (1982) 130 Cal App 3d 596, 599; Briggs v. Electronic Memories & Magnetics Corp., (1975) 53 Cal App 3d 900.

22. Plaintiff in the instant case must fully comply with the state and local procedures for proper service of the Summons and Complaint. For the Court to allow Plaintiff's invalid Summons and Complaint to go forward would work a great hardship on the Movant and undermine the clear mandate for strict compliance with statutory requirements in Unlawful Detainer cases. Service of the Summons and Amended Complaint is an integral part of an unlawful detainer proceeding, and Plaintiff should be held to this strict compliance standard.

23. Plaintiff's service of the Summons and Complaint on Movant was improper; therefore, this Court lacks jurisdiction over the Movant and this action should be dismissed without leave to amend.

## IV. THE COURT LACKS JURISDICTION OVER MOVANT BECAUSE SERVICE OF THE SUMMONS AND COMPLAINT IS BASED UPON A FATALLY DEFECTIVE NOTICE

**The California Code of Civil Procedure requires that all notice requirements be strictly construed against the Plaintiff in an Unlawful Detainer case.**

24. The Code of Civil Procedure governs the circumstances under which an unlawful detainer action may be prosecuted. Statutory notice requirements for unlawful detainer are strictly construed. Code of Civil Procedure § 1161 and Civil Code § 1442. One who seeks the summary remedy of unlawful detainer, which involves, a "forfeiture" of the tenant's right to possession, must strictly comply with the terms of the requirements. Horton-Howard v. Payton (1919) 44 Cal 108, 112.

25. The rule of liberal construction of pleadings provided by Code of Civil Procedure § 452 is inapplicable in unlawful detainer actions. Because unlawful detainer is an action seeking forfeiture and is a summary proceeding in which the Defendant's normal procedural rights are limited, the courts strictly construe the statutory procedures that regulate unlawful detainers and require strict compliance

with all statutory requirements. Civil Code § 1442; See Kwok (supra at 599), Briggs (supra at 905) and Liebovich v. Shahrokhkany (1997) 56 Cal App 4th 511, 513.

## V. CONCLUSION

26. Movant has clearly demonstrated that service of Summons and Complaint is fatally flawed and ineffective as to KAREN I. LEWIS and, therefore, the Court does not have jurisdiction over said Defendant in the herein unlawful detainer action. Movant is entitled to an Order granting this Motion to Quash Service of Summons and Complaint and an order dismissing this action without leave to amend.

Dated: January 25, 2017
Respectfully submitted,

KAREN I. LEWIS
By:

Karen irene
karen irene, House of Lewis

## VERIFICATION

I, the undersigned, declare that:

I have read the foregoing Notice of Motion and Motion to Quash Service of Summons and know the contents thereof and certify that the matters stated therein are facts of my own knowledge. I declare under the penalty of perjury that the foregoing is correct and complete to the best of my knowledge, information, and belief, and that this Verification is executed by the voluntary act of my own hand dated this twenty-fifth day of the first month, in the year two-thousand seventeen.

Karen irene
karen irene, House of Lewis

...tify that the information is from a record on file in the office of Assessor, County of Alameda, a... 12/15/16
Attest:
RON THOMSEN, ASSESSOR
COUNTY OF ALAMEDA
BY: Linh X. Dang

COUNTY OF ALAMEDA
# Assessor's Office
Property Value System

History | Value | Transfer | Map | Glossary | New Query

Parcel Number:40A-3423-41 Inactive:N Lien Date:01/01/2016 Owner:LEWIS JONATHAN A TR & LEWIS KAREN I TR
Property Address: 3012 PARTRIDGE AVE, OAKLAND, CA 94605-3527

| Mailing Name | | Historical Mailing Address | Document Date | Document Number | Value From Trans Tax | Parcel Count | Use |
|---|---|---|---|---|---|---|---|
| LEWIS JONATHAN A TR & LEWIS KAREN I TR | List Owners | 3012 PARTRIDGE AVE , OAKLAND, CA 94605-3527 | 04/12/2013 | 2013-132064 | | 1 | 1100 |
| LEWIS JON & KAREN | List Owners | 3012 PARTRIDGE AVE , OAKLAND, CA 94605-3527 | 08/27/2003 | 2003-508012 | $405,000 | 1 | 1100 |
| THOMPSON JOYCE M | List Owners | 3012 PARTRIDGE AVE , OAKLAND, CA 94605-3527 | 05/03/2002 | 2002-199020 | | 1 | 1100 |
| THOMPSON JOYCE M & INGLE SCHUYLER N | List Owners | 3012 PARTRIDGE AVE , OAKLAND, CA 94605-3527 | 08/24/2001 | 2001-317633 | $325,000 | 1 | 1100 |
| COLLIER LAURA B & FELICIA L | List Owners | 3012 PARTRIDGE AVE , OAKLAND, CA 94605-3527 | 07/11/1988 | 1988-170018 | $179,500 | 1 | 1100 |
| CRUZ JOSE R & LOURDES | List Owners | 3012 PARTRIDGE AVE , OAKLAND, CA 94605-3527 | 11/15/1983 | 1983-215253 | | 1 | 1100 |
| CRUZ JOSE & LOURDES | List Owners | 3012 PARTRIDGE AVE , OAKLAND, CA 94605-3527 | 10/27/1983 | 1983-202254 | | 1 | 1100 |
| CRUZ JOSE & LOURDES & JAUREGUI LUIS & PENNY | List Owners | 3012 PARTRIDGE AVE , OAKLAND, CA 94605-3527 | 05/13/1983 | 1983-81423 | | 1 | 1100 |
| COHN LAURENCE M | List Owners | 3012 PARTRIDGE AVE , OAKLAND, CA 94605-3527 | 04/03/1979 | 1979-61356 | | 1 | 1100 |
| STAYER LOUIS | List Owners | 3012 PARTRIDGE AVE , OAKLAND, CA 94605-3527 | 03/27/1974 | 1974-35691 | | 1 | 1100 |
| COCORES JOHN T & JENNY | List Owners | 3012 PARTRIDGE AVE , OAKLAND, CA 94605-3527 | 05/01/1972 | 1972-57049 | | 1 | 1100 |
| BRANDON CHARLES C + MARJORIE M | List Owners | 3012 PARTRIDGE AVE , OAKLAND, CA 94605-3527 | 04/01/1970 | 1970-33108 | | 1 | 1100 |

All information on this site is to be assumed accurate for property assessment purposes only, and is based upon the
Assessor's knowledge of each property. Caution is advised for use other than its intended purpose.

The Alameda County Intranet site is best viewed in Internet Explorer Version 5.5 or later.
Click here for more information regarding supported browsers.

Exhibit A

Scheer Law Group, LLP
Attn: Seigel, Jonathan
155 N. Redwood Drive
Suite 100
San Rafael, CA 94903

## Superior Court of California, County of Alameda
## Hayward Hall of Justice

| | |
|---|---|
| Crowd Fund Investment Group LLC<br>Plaintiff/Petitioner(s)<br><br>VS.<br><br>Lewis<br>Defendant/Respondent(s)<br>(Abbreviated Title) | No. RG16838956<br><br>Application Re: Posting Summons and Complaint Granted |

It appearing from the declaration submitted on behalf of Plaintiff(s): Crowd Fund Investment Group LLC, that reasonable diligence was used to effect personal service of the Summons and Complaint on Jon Lewis, Karen I Lewis, Paul James Coppock at 3012 Partridge Avenue, , Oakland, CA, named defendant(s) in the above entitled action,

IT IS HEREBY ORDERED THAT:

Service can be effected by posting the Summons on the premises in a manner most likely to give actual notice to the defendant(s) and mailing a copy of the Summons and Complaint by certified mail to defendant(s) at the above address.

Dated: 11/28/2016

K Colwell
Judge Kimberly E. Colwell

Exhibit B

SPENCER P. SCHEER #107750
JOSHUA L. SCHEER #242722
REILLY D. WILKINSON #250086
JONATHAN SEIGEL #168224
ALEXANDRIA C. CARRAHER #299258
SCHEER LAW GROUP, LLP
155 N. REDWOOD DRIVE, SUITE 100
SAN RAFAEL, CA 94903
Telephone: (415) 491-8900
Facsimile: (415) 491-8910
CF.400-U003S

Attorneys for Plaintiff
CROWD FUND INVESTMENT GROUP LLC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| CROWD FUND INVESTMENT GROUP LLC,<br><br>Plaintiff,<br><br>vs.<br><br>JON LEWIS aka JONATHAN LEWIS aka JONATHAN ANTHONY, KAREN I. LEWIS, and DOES 1-50, inclusive,<br><br>Defendant(s). | Case No.: RG16835721<br><br>PROOF OF SERVICE |

I, THERESE MARTIN, declare that:

I am employed in the County of Marin, State of California. I am over the age of 18 and am not a party to the within action; my business address is 155 N. Redwood Drive, Suite 100, San Rafael, California 94903.

On November 4, 2016, I served the within REQUEST FOR DISMISSAL on the interested parties in this action by placing true and correct copies thereof enclosed in a sealed envelope with postage prepaid in the United States Mail at San Rafael, California, addressed as follows:

JONATHAN ANTHONY LEWIS
C/O JAL UTILITY TRUST
484 LAKE PARK AVE #117
OAKLAND, CA 94610

 Exhibit C

KAREN LEWIS
484 LAKE PARK AVE #117
OAKLAND, CA 94610

PAUL JAMES
484 LAKE PARK AVE #117
OAKLAND, CA 94610

[X] (By Mail [Federal]) I placed such envelope with postage thereon fully prepaid in the United States mail at San Rafael, California.

[ X ] (By Mail [State]) I am readily familiar with SCHEER LAW GROUP, LLP's practice for the collection and processing of correspondence for mailing with the United States Postal Service; it is deposited with the United States Postal Service on the same date in the ordinary course of business at the business address shown above; I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing contained in this declaration.

[ ] (By Personal Service) I caused such envelope to be delivered by hand to the addressee(s).

[ ] BY FAX TRANSMISSION. Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the fax numbers as stated above. No error was reported by the fax machine that I used.

[ ] BY ELECTRONIC SERVICE. Based on an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service addresses as stated above.

[ ] BY OVERNIGHT MAIL: by depositing in a box or other facility regularly maintained by CALIFORNIA OVERNIGHT, an express carrier, or delivering to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery provided for or paid.

[X] Executed on November 4, 2016, at San Rafael, California.

[X] (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[X] (Federal) I declare that I am employed in the office of a member of the Bar at whose direction this service was made.

THERESE MARTIN

73 U.S. 556, *; 18 L. Ed. 948;
1867 U.S. LEXIS 1006, **; 6 Wall. 556

# [AETNA] INSURANCE COMPANY v. HALLOCK.

## SUPREME COURT OF THE UNITED STATES

*73 U.S. 556; 18 L. Ed. 948; 1867 U.S. LEXIS 1006; 6 Wall. 556*

**April 6, 1868, Decided; December 1867 Term**

**PRIOR HISTORY:** [**1]

ERROR to the Circuit Court for the District of Indiana; the case being thus:

In Indiana the distinction between proceedings in common law and chancery is abolished, and under their code one form of action only, the "civil action," is known. n1 This code provides as follows:

"Sect. 407. When a judgment requires the payment of money, or the delivery of real or personal property, the same may be enforced by execution."

"Sect. 409. The execution must issue in the name of the State, and be directed to the sheriff of the county, **sealed with the seal, and attested by the clerk of the court.**"

n1 2 Gavin & Hord's Statutes of Indiana, 33.

The proceedings to foreclose a mortgage are the same as in other actions, except that when there is no express agreement in the mortgage, nor any separate instrument, for the payment of the sum secured thereby, the remedy of the mortgagee shall be confined to the property mortgaged, and in that case the judgment of foreclosure shall order the mortgaged premises to be sold, or so much thereof as will satisfy the judgment. If there is a promise in the mortgage, or in a separate instrument, to pay the sum secured, the court shall direct in the [**2] order of sale that any balance which may remain unsatisfied after the sale of the mortgaged premises, shall be levied of any other property of the mortgage debtor. n2

n2 Sections 632-634.

Section 635 is thus:

"A copy of the order of sale, and judgment, **shall be issued and certified by the clerk,** ***under the seal of the court,*** to the sheriff, who shall thereupon proceed to sell the mortgaged premises, or so much thereof as may be necessary to satisfy the judgment, interest, and costs, *as upon execution;* and if any part of the judgment, interest, and costs, remain unsatisfied, the sheriff shall forthwith proceed to levy the residue of the other property of the defendant."

With these provisions of the code in force, the Aetna Insurance Company, brought suit against Hallock and others, to try the title to land. The defendants had possession, claiming under a judicial sale in proceedings to foreclose a mortgage. It was admitted that the plaintiffs below had the legal title to the land in controversy, unless it had been divested by those proceedings.

On the trial the defendant having introduced a transcript of the record of the proceedings under which they claimed [**3] title from the Court of Common Pleas of Vanderburgh County, "the plaintiffs then offered in evidence the original order of sale issued to the sheriff on the decree of foreclosure, and upon which order of sale the sheriff sold to the defendant in the case the premises in controversy, which order of sale appeared, on inspection thereof, not to have been issued under the seal of said Court of Common Pleas of Vanderburgh County, and not to have had the seal of said court impressed thereon, or in any manner annexed thereto. . . . And the court, *because the said order of sale was not issued under the seal of the said Court of Common Pleas of Vanderburgh County,* did find for plaintiffs, to which finding of the court the defendants at the time excepted." Judgment having been given accordingly, the question now before this court was the correctness of the decision so made.

**LAWYERS' EDITION HEADNOTES:** Case of rejected pension claim. --

Headnote:
After appeal dismissed, on motion, for involving too small an amount, cause reinstated on the docket, for purpose of special appeal by United States from court of claims, under 5, act, Mar. 3, 1863.

Exhibit D

**SYLLABUS:**

1. Under the civil code of Indiana, the "order of sale" in proceedings for the foreclosure of a mortgage comes within the function and supplies the purpose of an execution. Consequently, the code requiring executions to be sealed with the seal of the court, such order of sale, if not so sealed, is void.

2. [**4] The sheriff could not sell **without** such order.

**COUNSEL:**

*Mr. R. M. Corwine, for the plaintiff in error:*

Did the omission to use the seal of the court make the order **void**, or was it avoidable merely? The general rule in judicial sales is, that the purchaser is not bound to look beyond the "judgment, levy, and sale." All other steps (such as the issuing of an execution after a year and a day without a revivor) are merely directory to the officer. n3 As between the parties to the process, or their privies, the return is usually conclusive, and not liable to be collaterally impeached. In *Sowle* v. *Champion*, in the Supreme Court of Indiana, n4 it was held that an order of sale, issued on a decree of foreclosure, which did not set out a copy of the decree, was informal, under the statute, but was *not void,* and if not set aside on the defendants' motion, that all acts done under it were valid. Yet the direction of the code, "that *a copy of the order of sale* and judgment *shall* be issued," is as stringent and mandatory as that other direction, that it "shall be issued and certified by the clerk ***under the seal of the court,***" &c. If the one is merely directory, [**5] the other is so also.

n3 Jackson *v.* Bartlett, 8 Johnson, 361, 367; Jackson *v.* Rosevelt, 13 Id. 101, 102.

n4 16 Indiana, 165.

*Messrs. Hughes, Denvers, and Peck, contra.*

**OPINION BY:**

MILLER

**OPINION:**

[*558] Mr. Justice MILLER delivered the opinion of the court.

If the paper here called an order of sale is to be treated as a **writ of execution** or *fieri facias* issued to the sheriff, or as a process of any kind issued from the court, which the law required to be issued under the seal of the court, there can be no question that it was **void**, and conferred no authority upon the officer to sell the land.

**The authorities are uniform that all process issuing from a court, which by law authenticates such process with its seal, is void if issued without a seal.** Counsel for plaintiffs in error have not cited a single case to the contrary, nor have our own researches discovered one.

We have decided in this court that a writ of error is **void for want of a seal**, though the clerk had returned the transcript in obedience to the writ. n5

n5 Overton *v.* Check, 22 Howard, 46.

[*559] We have held that a bill of exceptions must be under the seal of the judge. n6 [**6]

n6 *Pomeroy's Lessee v. Bank of Indiana, 1 Wallace, 592;* and see *Boal's Lessee v. King, 6 Ohio, 11; Bybee v. Ashby, 2 Gilman, 157; Tibbetts v. Shaw, 19 Maine, 204; Witherill v. Randall, 30 Id. 170;* State *v.* Curtis, 1 Hayward, 471; *Hall v. Jones, 9 Pickering 446.*

It is true that the paper now under consideration is not an ordinary *fieri facias,* nor is it any other common-law writ. It may be well, therefore, to consider what is its relation to the writ of *fieri facias,* and especially whether it was essential to the authority of the sheriff to make the sale. That the ordinary writ of *fieri facias* is the authority of the sheriff to levy on property and sell it is undoubted, and needs no reference to authorities to support it; and if the supposed writ is void, **then the levy and sale are also void**, and not merely voidable, because they are made without any authority on the part of the officer.

The decisions cited by counsel are all cases where process was issued irregularly, in point of time, or where the officer has not proceeded according to some statutory requirement which was directory to him, but did not affect his power to sell. [**7]

But if his power to sell depends upon a process, and that process shows on its face that it is void, it can confer no authority, and all his proceedings under it are simply void.

The question then recurs, did the authority of the sheriff to make the sale on which plaintiffs in

error rely, depend upon the order of sale issued by the Court of Common Pleas?

In courts which pursue the chancery practice in foreclosing mortgages, unaffected by statutory provisions, the sale is made by a commissioner appointed by the court. This is usually one of the standing master commissioners of the court, or, for reasons shown, some special commissioner for that purpose. In neither case does any process or order under seal of the court issue to the commissioner. He may, if he thinks proper, procure a copy of the decree and order appointing him commissioner, or if the party who wishes [*560] the decree executed thinks proper in this mode to demand of him to proceed, he may furnish him such copy.

But it is believed that the decree itself is the authority on which the commissioner acts, and if he proceeds in conformity to the decree, the sale will be valid although no copy has been placed [**8] in the hands of the commissioner.

In the courts of Indiana the distinction between common law and chancery proceedings is abolished, and under their code of civil procedure but one form of action, called a civil action, is known. This code provides, § 407, that "when a judgment requires the payment of money, or the delivery of real or personal property, the same may be enforced by execution." Section 409 says, "The execution must issue in the name of the State, and be directed to the sheriff of the county, sealed with the seal, and attested by the clerk of the court."

Section 635, which relates to the proceedings to foreclose a mortgage, we give verbatim:

"A copy of the order of sale, and judgment, shall be issued and certified by the clerk, ***under the seal of the court***, to the sheriff, who shall thereupon proceed to sell the mortgaged premises, or so much thereof as may be necessary to satisfy the judgment, interest, and costs, *as upon execution;* and if any part of the judgment, interest, and costs remain unsatisfied, the sheriff shall forwith proceed to levy the residue of the other property of the defendant."

Though the order of sale here described may not come [**9] under the name of any of the recognized common law writs of execution, as *capias, fieri facias,* or others, yet it comes clearly within the function and supplies the purpose of an execution -- that is, a process issuing from a court to enforce its judgment.

The statute recognizes it as such, and requires that it shall issue under the seal of the court. The sheriff to whom it is directed is required to proceed "as upon execution." If the debt is not satisfied by the sale of the property specifically mentioned in the order, it then operates as a *fieri facias,* under which the sheriff is directed to levy the residue of any [*561] other property of the defendant. It is therefore to all intents and purposes an execution, and the statute expressly requires that it must issue under the seal of the court. **Without the seal it is void**. We cannot distinguish it from any other writ or process in this particular.

It is equally clear that under the Indiana statute the sheriff could not sell without this order, certified under the seal of the court, and placed in his hands. **This is his authority, and if it is for any reason void, his acts purporting to be done under it are also [**10] void.**

**JUDGMENT AFFIRMED.**

**FRED M. MILLER, PETITIONER vs. HIRAM D. WISEMAN ET ALS.**

**[NO NUMBER IN ORIGINAL]**

**SUPREME JUDICIAL COURT OF MAINE, CUMBERLAND**

***125 Me. 4; 130 A. 504; 1925 Me. LEXIS 66***

**October 1, 1925, Decided**

**PRIOR HISTORY:** [***1] On exceptions. A petition for a writ of certiorari to require two justices of the peace in a poor debtor's disclosure proceeding, to certify and bring up their records of the proceedings for the purpose of having them quashed for want of jurisdiction on the ground of the absence of a court seal on the process. The application for the writ was denied and exceptions taken. Exceptions sustained.

The case very fully appears in the opinion.

**DISPOSITION:** Exceptions sustained.

**HEADNOTES:** *Whenever it is shown that the inferior court **or tribunal** has no jurisdiction of the subject matter, and the question is not open on appeal, the court will not refuse a writ of certiorari.*

*Want of jurisdiction apparent on the face of the record can be raised by motion to dismiss at any stage of the proceedings, and cannot be waived.*

***A process issuing from a court, the authentication of which rests upon the court seal, is void in absence of a seal.***

**COUNSEL:** Frank H. Haskell, for the petitioner.

Maurice E. Rosen, for the respondent.

**JUDGES:** SITTING: WILSON, C. J., PHILBROOK, DUNN, STURGIS, BARNES, JJ.

**OPINION BY:** DUNN

**OPINION:**

[*4] [**505] DUNN, J. Exceptions to the denial of an application for certiorari to justices of the peace.

An impecunious person held in arrest on execution was discharged on giving bond. R. S., Chap. 115, Sec. 49. He endeavored to save his bondsmen harmless, and to absolve himself from future loss of liberty on any enforcing process of the same judgment, by proceedings under the Poor Debtor's Act (section 51, et seq.).

The citation from the magistrate to the creditor failed to follow the statute in the positive requirement of a seal. Section 51. [***2]

[*5] At the appointed time and place the parties met. One justice of the peace was chosen by the debtor, and the one by the counsel for the creditor, and the two thus selected sat together in the disclosure court.

Once the court was functioning, the creditor's counsel raised the point of the absence of the seal from the citation, **and moved to quash**. The motion was overruled. Counsel retired. The hearing went on destitute of interest, and eventually the statute-prescribed oath was administered to the judgment debtor.

On petition for certiorari it was ruled: (1) The omission of the seal is not a matter of substance; (2) that participation in the forming of the court effected cure of clerical irregularity in the process; (3) that, in and as a matter of judicial discretion, certiorari will not issue to correct what an amendment would have reached.

In hearings to liberate debtors, mere want of form and circumstantial errors count as nothing when the situation may be rightly understood, and are amendable on motion. Section 53.

The art of writing was not always an accomplishment common to citizenry. Before literacy was general, and the written signature considered a truer voucher [***3] of genuineness, the main proof of the authenticity of documents, whether private or public, was an impression made on clay, lead, wax, paper, or other substance by means of a die of metal, of stone, or other hard material. The employment of seals may be traced to high antiquity. The Bible contains frequent allusions to them. The use of clay in sealing is noticed in the book of Job (xxxviii, 14), and the signet ring in Genesis (xxxviii, 18). Engraved signets were long ago in use among the Hebrews (Ex. xxviii, 11, 36; xxxix, 6). As recent as the time of Shakespeare, Shylock speaks to Antonio:

"Go with me to a notary, and seal me there

Your single bond; . . . ."

--*Merchant of Venice, Act 1, Sc. iii.*

And Antonio replies:

"I'll seal to such a bond."

--*Id.*

In another play the dramatic poet makes Hamlet say:

"Where every god did seem to set his seal

To give the world assurance of a man."

--*Act 3, Sc. iii.*

[*6] Documents are still sealed in compliance with legal formality. But personal seals with effigies, heraldry, or other devices, with or without a name, or with name only, or with legend only, distinguishing the person, or supposed to so distinguish him, [***4] and which it would have been difficult to duplicate exactly, are not in use. The seal has lost the power of acting as a substitute for signatures. It is now affixed to legal instruments principally to furnish evidence of their authenticity. Sealing has become constructive rather than actual. *Woodman v. York Railroad Company, 50 Me. 549.*

Under the statutes of Me. a justice of the peace has no seal of office, but a wafer [**506] attached could be called a seal. *State v. McNally, 34 Me. 210.* The demand of the statute, in the very language and order of the olden law, that the citation be "under his hand and seal" (2 Hale P. C.), may be without much present day meaning so far as sealing is concerned. But constitutional legislation calls therefor, and veneration for the law is the politic religion of the State. The requirement that process be sealed would be nugatory, if to regard it or disregard it amounted to the same thing. The compulsion of authority is yet essential to the public good.

If the seal has outlived its usefulness, if its competency to authenticate has ceased, if the effect of its absence should be classed as a formal irregularity which [***5] is waived by general appearance, or the absence be amendable at the discretion of the court, if sealing be a custom not adapted to our day, let the Legislature be told. The image of the seal, technical though perhaps it be, is so interwoven with our rules, and understood and advised by the profession as basic, that it is not to be abridged this side of the law-making power. "So long as a seal is required to be affixed, though we may not be able to discover its real use, **yet we must not dispense with what the law requires**." MELLEN, C. J. in *Porter v. Haskell, 11 Me. 177.* Chief Justice Shepley thought insistence upon the use of the seal to have purpose. "It gives the instrument a higher grade of character, arrests the attention in the hurry of business, allowing a pause for reflection." *State v. Drake, 36 Me. 366.* These jurists spoke before the enactment, in 1878, Chapter 59, of the correcting power. But the omission of the seal does not fall in this class. Collateral attack will not avoid its absence from a debtor citation. *Lewis v. Brewer, 51 Me. 108; Gray v. Douglass, 81 Me. 427, 17 A. 320.* In *Lewis v. Brewer* [***6] , Judge Walton remarked in passing: "If a party desires [*7] to take advantage of such a defect, he should call the attention of the justices to it, in which case they would undoubtedly hold the citation to be insufficient. If not, the aggrieved party could apply for a **writ of certiorari to quash their proceedings**." Language parallel in effect is in *Gray v. Douglass, supra.*

That process shall not abate for want of form, or for incidental errors or mistakes, not bar to understanding rightly the person and the case, is **statutory** to all courts of justice. Laws 1821, Chap. 59, Sec. 16; R. S. Chap. 87, Sec. 11. The law finds application on both civil and criminal sides. An execution issued by a magistrate without being under seal is void *Porter v. Haskell, supra.* In a previous case, where the clerk omitted to affix the seal, he was allowed to do so. *Sawyer v. Baker, 3 Me. 29.* This decision is referred to as made on ex parte motion ( *Porter v. Haskell, supra),* from which it was inferred as not esteemed a reliable authority ( *State v. Flemming, 66 Me. 142).* A venire without seal is illegal. *State v. Lightbody, 38 Me. 200.* [***7] **An indictment where the venire must be under seal is bad, and amendment cannot supply the lack.** *State v. Fleming,* supra. An original writ without seal is not amendable. *Witherel v. Randall, 30 Me. 168.* **A warrant without seal is void**. *State v. Drake, supra.* If the writ have a wrong seal, the right one may not be impressed instead. *Bailey v. Smith, 12 Me. 196.* Undeniably, if the writ were unsigned, this correction could be made ( *Mathews v. Bowman, 25 Me. 157 at page 163),* did the statute not interdict ( *Pinkham v. Jennings, 123 Me. 343, 122 A. 873).* The date of a writ ( *Gardiner v. Gardiner, 71 Me. 266),* the teste ( *Converse v. Damariscotta Bank, 15 Me. 431),* the return day ( *Guptill v. Horne, 63 Me. 405),* and the name of the defendant, rights of third persons not intervening ( *Wentworth v. Sawyer, 76 Me. 434),* all are correctable. The reason these errors may be made right, and absence of the seal is forbidden to be, is that theoretic custody of the seal is with the official sealer of the writs, who affixes it to documents in other respects [***8] already completed. "No signable writs are to be sealed, till they have been duly signed by the proper officer. R. T. 1656." 1 Tidd's Practice, 33. "As for the commission from the king, it staid at the seal for want of paying the fees." Winthrop, History of New England, 1, 276.

**A process, issuing from a court which by law authenticates such process with its seal, is void if issued**

**without a seal.** *Aetna Ins. Co. v. Hallock, 73 U.S. 556, 6 Wall. 556, 18 L. Ed. 948.* In this case no power of a [*8] curative statute is involved. **But nevertheless it sheds light upon the importance attached to the seal.** A summons issued without seal can give no jurisdiction where the statute provides it must be issued under seal, although the statute also provide that the court should disregard any error or defect which does not affect the substantial rights of the parties. *Choate v. Spencer, (Mont.) 20 L.R.A. 424.* And, to come back home, **want of jurisdiction apparent on the face of the record can be raised by motion to dismiss at any stage of the proceedings.** *Tibbetts v. Shaw, 19 Me. 204; Pinkham v. Jennings, supra.*

Clearly a distinction [***9] is to be drawn between appearing generally in proceedings before a tribunal theretofore set up, and as in the nature of the situation one must, appearing to choose one of the magistrates, that a motion to dismiss might be made to him and his associate. Simple mention of the fact of the distinction would seem to dispose of the proposition.

Whenever it is shown that the inferior court or tribunal has no jurisdiction of the subject-matter, and the question is not open [**507] on appeal, the court will not refuse the writ. *Bangor v. County Commissioners, 30 Me. 270; Levant v. County Commissioners, 67 Me. 429; Phillips v. County Commissioners, 83 Me. 541.*

It remains to seal the destruction of the **pretended proceedings** before the justices of the peace by directing that the mandate be, *Exceptions sustained.*

57 Ore. 147, *; 110 P. 702, **;
1910 Ore. LEXIS 22, ***

**STARKEY v. LUNZ.**

**[NO NUMBER IN ORIGINAL]**

# SUPREME COURT OF OREGON

***57 Ore. 147; 110 P. 702; 1910 Ore. LEXIS 22***

**August 4, 1910, Argued**
**September 13, 1910, Decided**

**PRIOR HISTORY:** [***1] From Douglas: JAMES W. HAMILTON, Judge.

Statement by MR. CHIEF JUSTICE MOORE.

This is a suit by Frank F. Starkey against James H. Lunz, to determine an adverse interest in 160 acres of land in Douglas County, the complaint being in the usual form.

The answer denies the material averments of the complaint, and alleges that on August 19, 1904, John Brown was the owner of the real property in controversy, and, being indebted to David H. Lawrence, the latter commenced an action against him in the circuit court for the above-named county, and, having made and filed the necessary affidavit for an attachment and given the requisite undertaking therefor, a writ was issued pursuant to which the land was attached on the day named; that a judgment was rendered in that action and the land ordered to be sold; that a sale thereof was made to Lawrence, the sale confirmed, and a sheriff's deed executed to the purchaser who conveyed all his interest in the premises to the defendant herein; and that, by virtue of such proceedings, the latter became and is the owner in fee of the property.

The reply put in issue the allegations of new matter in the answer, and, the cause having been [***2] tried, the court found that the attachment proceedings were in substantial compliance with the requirements of the statute in such cases, and dismissed the suit, whereupon the plaintiff appeals.

REVERSED.

**DISPOSITION:** REVERSED.

**HEADNOTES:** ATTACHMENT--DEFECTS IN WRIT--**SEAL--OMISSION--EFFECT.**

1. A court clerk's **omission to attach his seal** to a writ as required by law is a remedial irregularity only when the statutes authorize such amendment, and, **since circuit clerks are required to affix their seals to process issued by them,** an attachment is void where such a clerk omitted his seal on the writ; the provision of Section 102, B. & C. Comp., permitting amendment of "proceedings" in furtherance of justice, not being enough to authorize amendment by affixing the seal.

[As to the amendment of writs of attachment and of the papers on which they are based, see note in *61 Am. Dec. 125.]*

COURTS--JURISDICTION--NONRESIDENCE.

2. A court of general jurisdiction can exercise authority over all property within its territorial limits when brought before it by due process, and it may dispose of it by judgment or decree, though the owner is a nonresident not found within the court's jurisdiction, and neither appears nor answers.

[As to jurisdiction of courts over citizens of another state or country, see notes in *76 Am. Dec. 665; 6 Am. St. Rep. 179.* As to jurisdiction of courts over foreign corporations, see notes in *85 Am. St. Rep. 905; 89 Am. St. Rep. 654.]*

JUDGMENT--PROCESS TO SUPPORT--JURISDICTION OF PERSON AND PROPERTY.

3. If personal service of summons has been made on defendant in attachment within the state, or if he has appeared or answered, personal judgment may go against him and general execution issue thereon, but, when otherwise, power to render judgment is limited to property brought before the court by valid attachment.

[As to jurisdiction of courts dependent upon attachment of property, see note in *76 Am. St. Rep. 800.]*

**COUNSEL:** For appellant there was a brief and an oral argument by Mr. S. D. Allen.

For respondent there was a brief over the names of Mr. John T. Long and Mr. Frank G. Micelli, with an oral argument by Mr. Andrew M. Crawford.

**JUDGES:** Opinion by MR. CHIEF JUSTICE MOORE.

**OPINION BY:** MOORE

**OPINION:**

[*148] [**703] Opinion by MR. CHIEF JUSTICE MOORE.

The plaintiff asserts title from Brown by a subsequent attachment of the land, a judgment, a sale, and a sheriff's deed, and by a deed from such former owner. It is maintained that in the action instituted by Lawrence the writ of attachment was void, and that as Brown was not a **resident of Oregon**, nor found therein, and did not appear or answer in that action, the judgment directing a sale of the premises was rendered without jurisdiction, and, such being the case, an error was committed in dismissing the suit.

[*149] 1. The **defect** which, it is insisted, makes the writ ineffectual, **is the failure of the officer issuing it [***3] to attach his seal.** The statute prescribing the style of writs is as follows:

"**All process** authorized by this Code, **to be issued by any court or officer thereof**, shall run in the name of the State of Oregon, and be signed by the officer issuing the same; **and if such process be issued by a clerk of a court, he shall affix thereto his seal of office.**" Section 1227, B. & C. Comp.

The writ of attachment in the action brought by Lawrence was issued by the clerk of the circuit court for Douglas County, who omitted to affix any seal to the instrument. Some contrariety of judicial expression exists respecting the efficacy of process to which the officer issuing it has neglected to attach his seal when he has one, and is required by law to affix it. We think these decisions can be reconciled when the statutes severally construed are examined. If by such enactments process can be amended before or after a judgment has been rendered, the failure of a clerk of court to attach to a writ his official seal, when so required by law, will be regarded as a remedial irregularity; **but, if the statute does not authorize such a change of process, the neglect to affix the seal makes the writ void**. Thus [***4] in *Gates v. Reynolds, 13 Iowa 1,* the opinion announced as subsequently explained by the Supreme Court of that state, illustrates the characteristic difference here attempted to be made. That was an action to recover unliquidated damages for false representations, and a writ of attachment having been issued without presenting to a court or judge the complaint for allowance of the amount and value of the property to be seized, as required by the Code of 1851, it was held that an error was committed by the trial court in denying the defendant's motion to dissolve the attachment. Referring to the decision in that case, Mr. Justice SEEVERS in *Magoon v. Gillett, 54 Iowa 54, 55 (6 N.W. 131),* says:

"At that time there was no statute as there is now authorizing the proceedings in the attachment to be amended, and strict construction of the attachment law was the rule."

[*150] After setting out the statute permitting amendments of writs of attachment or other proceedings, it is further observed:

"In *Foss v. Isett, 4 G. Greene 76* [Iowa] *(61 Am. Dec. 117),* it was said that a writ of attachment issued without [***5] the seal of the court had no more force and efficiency than a piece of blank paper, and that it was void and could not be amended. This case was followed in *Shaffer v. Sundwall, 33 Iowa 579.* In the subsequent case of *Murdough v. McPherrin, 49 Iowa 479,* it was held that a writ which issued from the district court, to which the seal of the circuit court had been attached, could be amended by placing thereon the seal of the court whence it issued. It was urged in

that case that a writ without the seal of the proper court was void, and could not be amended, but it was held otherwise. The same point was made in *Lowenstein v. Monroe, 52 Iowa 231* [**704] *(3 N.W. 51)*, where the causes for the attachment had been verified by an attorney. These cases are decisive of that at bar, so far as the objection under consideration is concerned."

In *Insurance Co. v. Hallock, 6 Wall. 556 (18 L. Ed. 948)*, in construing a statute of Indiana requiring an execution to be sealed, it was determined in a collateral suit that an "order of sale" in proceedings for the foreclosure of a mortgage came within the functions and [***6] supplied the purpose of an execution, **which, if issued without a seal, was void**. In *State v. Davis, 73 Ind. 359, 360*, it was held that a summons was not void because not attested by the seal of the court, and that the court had the right to order the clerk to affix the seal *nunc pro tunc* after judgment had been entered and the term closed. In deciding that case Mr. Justice ELLIOTT, speaking for the court, says:

"The case of *Insurance Co. v. Hallock, 6 Wall. 556 (18 L. Ed. 948)*, does decide that an order of sale issued by a court of this state **was void because not attested by the seal of the court.** It has also been held by this court that, where there is no statute to the contrary, a writ or record must be attested by the seal of the court from which it comes."

Further in the opinion it is said:

"The liberal provisions of our statute, respecting the summons, would take such writs from under the old common-law [*151] rule, even if it were conceded that it is the rule which must be adopted respecting other writs. The provisions of the Code upon this subject are contained in Article IV, and the provision which directly bears upon this [***7] point is found in Section 37, and is as follows: 'No summons, or the service, shall be set aside, or be adjudged insufficient, where there is sufficient substance about either to inform the party on whom it may be served, that there is an action instituted against him in court.' We think it very clear that the omission to affix the seal does not prevent the writ from imparting to the parties against whom it is issued, and that very fully and distinctly, information that an action is instituted against them."

In *Choate v. Spencer, 13 Mont. 127 (32 P. 651: 20 L.R.A. 424: 40 Am. St. Rep. 425)*, it was ruled that a **summons issued without the seal of the court was void**, and could give no jurisdiction where the statute demanded that such process "must be issued under the seal of the court," although the statute also provided that the court should disregard any error or defect in the proceedings which **did not** affect the substantial rights of the parties.

2. Our statute authorizing changes in promotion of right is as follows:

"The court may, at any time before trial, **in furtherance of justice**, and upon such terms as may be proper, allow any [***8] pleading or proceeding to be amended by adding the name of a party, or other allegation material to the cause; and in like manner and for like reasons it may, at any time before the cause is submitted, allow such pleading or proceeding to be amended, by striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or **when the amendment does not substantially change the cause of action or defense**, by conforming the pleading or proceeding to the facts proved." Section 102, B. & C. Comp.

A defect in an affidavit for an attachment may be amended. Section 311, B. & C. Comp. The right to correct an error being thus limited to an affidavit, it would seem necessarily to follow that the power to change a writ of attachment did not exist, since no provision has been made by statute for amending any process. We do not think the word "proceeding" [*152] as employed in Section 102, B. & C. Comp., is comprehensive enough to embrace process, for the means by which a class of rights are enforced are denominated special proceedings: Title VIII, B. & C. Comp. It is a well-recognized principle that a **court of general jurisdiction** can exercise [***9] authority over all property **within its territorial limits** when brought before it by **due process of law**, and may dispose of such property by judgment or decree, though its owner is a nonresident, not found within the jurisdiction of the court, and neither appears nor answers in the action.

3. The provisional remedy whereby a court's dominion over property **in** Oregon is obtained is by attachment, which control is secured by a compliance with the requirements of the statute granting the ancillary remedy. If judgment be rendered in the action and the property subjected to a lien for the payment of a debt has not been discharged from the attachment, the court is required to order and adjudge that the property be sold to satisfy the plaintiff's demand. Section 309, B. & C. Comp. If personal service of the summons has been made upon the defendant **within the State**, or if he has appeared or answered in the action, a personal judgment may be rendered against him, and a general execution can be issued thereon. When he has not been served at the place and in the manner indicated, and has not appeared or answered, the power of the court to render a judgment that is of any binding force is limited [***10] to the property which by attachment has been brought within its jurisdiction.

The judgment therefore may be *in personam* and *quasi in rem*, or the latter only, and, if no jurisdiction of the *res* has been secured, the court is powerless to condemn the property to the satisfaction of any debt, and the attempted attachment necessarily fails. In order to make valid condemnation, the specific property ordered to be sold must be within the territorial limits of the court held by an efficacious writ of attachment, legally issued, properly executed, and duly returned. Our statute expressly demands that [*153] process, when issued by a clerk [**705] of court, shall be evidenced by his official seal, and no provision is made by statute for correcting the defect occasioned by the failure of that officer to affix his seal. The writ herein, being the process by which jurisdiction of the real property was undertaken to be secured, was ineffectual, the attempted levy thereof created no lien, and the judgment against the land is void and subject to collateral attack. It will be remembered that Starkey caused a subsequent attachment of the real property to be made, and thereafter [***11] obtained from the former owner a conveyance of all his interest in the premises. The plaintiff's race with the defendant's grantor, Lawrence, was a contest between Brown's creditors for supremacy, and, Starkey having ultimately won, there is no principle of equity intervening to prevent him from keeping what he procured by his vigilance.

The decree will therefore be reversed, and one entered here granting to the plaintiff the relief sought by the complaint.

**REVERSED.**

**Oelbermann and another, Respondents, v. Ide, interpleaded, Appellant.**

**[NO NUMBER IN ORIGINAL]**

## SUPREME COURT OF WISCONSIN

*93 Wis. 669; 68 N.W. 393; 1896 Wisc. LEXIS 106*

**September 2, 1896, Argued**
**September 22, 1896, Decided**

**PRIOR HISTORY:** [***1] APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. Reversed.

The parties to the original action, and the garnishee action as well, were nonresidents. Personal service was obtained on the garnishee defendants in this state. Service was obtained on the defendant in the principal action by publication. The complaint was verified in New York before S. Steinhammer, who signed as commissioner of the state of Wisconsin for New York. A seal of office was **impressed** upon the paper, made by an **engraved seal** containing words as follows: "S. Steinhammer, Commissioner for in the State of New York." The blank space left in the impression of the engraved seal was filled in by **pen and ink** with the word "Wisconsin." The affidavit for publication in no way showed that the defendant had property in this state, except by the following words: "That defendant has property in this state, to wit, moneys in the hands of" various persons (naming them), "who are garnishees in the above-entitled action now pending by above plaintiffs against said defendant in this case." The proof of service of the garnishee process upon the garnishee defendants does not show that, [***2] after due diligence, service could not be made on the principal defendant in this state.

The garnishees answered that they became severally indebted to the principal defendant, Henry P. Ide, but that George D. Ide claimed to own such indebtedness, under an assignment from Henry P. Ide made before service of the garnishee process upon them. Issue was taken on such answer.

George D. Ide was duly interpleaded, and answered, setting up that such indebtedness, for a valuable consideration, was on the 9th day of September, 1890, before the service of the garnishee process on the garnishees, assigned to him, and that at the time of the making of such answer he was the owner thereof. Issue was taken on such answer. The result of the trial of such issue was that the court found, for the plaintiffs, that the several assignments of indebtedness under which the interpleader claimed were void as against plaintiffs, and further found that the amount of such indebtedness of the garnishee August Neubling, at the time of the service of process upon him, was $ 866.68, and of the garnishee A. C. Feldt, $ 76.63. The assignments made to George D. Ide were, in form, to him personally. He did not [***3] claim any personal interest, other than such as belonged to him as a legatee of George L. Ide, deceased. He claimed to own the indebtedness, and hold the same, as executor of the will of George L. Ide. The court found all the facts to exist requisite to entitle plaintiffs to judgment against the interpleaded defendant, and ordered judgment accordingly against him personally, and as executor of the will of George L. Ide, dismissing his answer, and for restitution of any sum he had collected from the garnishees after the service of garnishee process upon them. Judgment was entered accordingly.

Exceptions were filed, which will be referred to in the opinion so far as necessary. The appeal is from the judgment against the interpleaded defendant only.

**DISPOSITION:** Judgment reversed and cause remanded.

**HEADNOTES:** *Garnishment: Jurisdiction in principal action: Service by publication: **Verification of complaint:** Commissioner of deeds: **Official seal.***

1. A judgment in garnishment proceedings against an interpleaded claimant of the garnished property must be reversed on appeal if the judgment in the principal action is void for want of jurisdiction of the court to enter it.

2. Under sec. 2640, R. S., an order for the service of a summons by publication is a **nullity** unless there was a **duly verified** complaint on file when it was made.

3. Under secs. 182, 183, R. S., the verification of a complaint in another state before a commissioner for Wisconsin is insufficient unless authenticated by a **proper official seal.**

4. **Nothing short of an impression on the paper will constitute an official seal;** and any words or figures made by pen or otherwise than impressed so as to show in the paper itself or some substance attached to the paper, **cannot be considered as any part of the seal**.

5. The words "S. Steinhammer, Commissioner for in the State of New York," impressed on paper, **do not** constitute a sufficient official seal; and the word "Wisconsin," written with a pen in the blank space, adds nothing thereto.

**COUNSEL:** F. J. Walthers, for the appellant.

For the respondents there was a brief signed by Williams, Friend & Bright and Orren T. Williams, and oral argument by Orren T. Williams.

**JUDGES:** ROUJET D. MARSHALL, J.

**OPINION BY:** MARSHALL

**OPINION:**

[**394] [*671] MARSHALL, J. If the judgment in the principal action is void for want of jurisdiction of the court to enter it, then the judgment appealed from must [***4] be reversed. It is claimed on the part of appellant that such is the case, because the verification to the complaint was insufficient to support the order for service by publication, in that it purports to have been made in New York before a commissioner of deeds for [*672] this state, and that his official character was not authenticated by an official seal; that though a seal was impressed on the paper, containing the words, "S. Steinhammer, Commissioner for in the State of New York," and the blank space in such impression was filled up with pen and ink by writing in the word "Wisconsin," it is not a seal of office, within the meaning of the statute upon the subject (sec. 182, R. S.), sufficient to show the official character of the commissioner.

An order for the service of a summons by publication can only be granted on a complaint duly verified and filed, and an affidavit, together showing the facts required to exist. R. S. sec. 2640. Without such verified complaint on file at the time of making such order, it is a nullity. *Cummings v. Tabor, 61 Wis. 185, 21 N.W. 72; Manning v. Heady, 64 Wis. 630, 25 N.W. 1; Witte v. Meyer, 69 Wis. 595, 35 N.W. 25.* [***5] If the verification of a complaint is made before an officer outside this state, unless his official character is authenticated by his official seal, if the law provides for that method of establishing such character, such complaint cannot be treated as verified according to law. *Fellows v. Menasha, 11 Wis. 558; Knowles v. Fritz, 58 Wis. 216, 16 N.W. 621.*

Sec. 182, R. S., provides that, before the commissioner is authorized to exercise any power, he shall, in addition to depositing in the office of the secretary of state a prescribed oath of office, deposit an impression of his seal of office. Sec. 183, R. S., provides that his acts done pursuant to the laws of this state, certified under his hand and seal of office, shall be as valid as if done by a proper officer of this state. The same section provides that the commissioner may administer oaths required to be used in this state. From this it is obvious that only by force of the statute can the verification be [**395] made before a commissioner in another state. The law that provides that it may be so made provides the manner in which the official act must be authenticated, and this court has [***6] no authority to dispense with the statutory requirement. [*673] Counsel for respondents treats the point lightly, but we are unable to say that an express statutory provision may be treated as a mere formal matter. It positively requires an official seal to be used by the commissioner, in order to authenticate his official acts, without providing what such seal shall contain. Therefore, unless the seal used is sufficient, within the authorities on the subject, we must hold, in conformity to previous adjudications of this court, that the complaint was not verified as the statute requires.

It needs no argument or citation of authority to support the proposition that an official seal, when required by statute, no particular form or words being prescribed, **must contain enough to show the official character of the officer**, and **must be capable of making a distinct and uniform impression upon the paper** on which the certificate is written, or on some tenacious substance, as wax, or on wafers, or some adhesive substance, attached thereto, capable of receiving an impression. R. S. sec. 4971, subd. 16; *Pierce v. Indseth, 106 U.S. 546, 27 L. Ed. 254, 1 S. Ct. 418.* A seal [***7] made by a pen, or a written scrawl, does not fill the requirements of an official seal. *Mason v. Brock, 12 Ill. 273;* 21 Am. & Eng. Ency. of Law, 909; *Hinckley v. O'Farrel, 4 Blackf. 185.* **A design printed in ink is not a seal of office.** *Richard v. Boller, 51 How. Pr. 371.* "**A seal can only be made upon the paper itself**, when the **design is impressed upon the paper** and does not require any other substance to exhibit it." *Richard v. Boller, 6 Daly 460.* These authorities, to which many more might be added, **clearly show that nothing short of an impression on the paper will constitute an official seal**. Any word or figures made by pen or otherwise than impressed so as to show in the paper itself or some substance attached to the paper, **cannot** be considered as forming any part of the seal. R. S. sec. 4971, subd. 16.

Applying what has been said to the instant case, the word "Wisconsin," written in after the impression was made on [*674] the certificate, obviously adds nothing

to the seal; for, if one part could be thus made, it all might be, and the requirement that the seal shall be impressed on the paper would be entirely [***8] unsatisfied. It follows that the question must be answered, Are the words, "S. Steinhammer, Commissioner for in the State of New York," impressed on paper, sufficient to indicate the official character of the officer? Clearly not. That appears too plain for argument. It is wanting in the word written in, "Wisconsin," and without it the impression is meaningless. Without it no information is conveyed by such impression, in respect to the state for which the officer is commissioner, or whether he is a commissioner of deeds at all. Such was the conclusion reached by the supreme court of the state of Iowa in a similar case. *Gage v. D. & P. R. Co. 11 Iowa 310*, cited by counsel for appellant. In deciding the question under consideration, BALDWIN, J., said, in effect: 'If a portion of the words necessary to be used in the body of the seal can be written, the whole may be. **The law requires that they shall be impressed.** A seal of office thus designed [without name of the state] may be used for any state, whereas it is contemplated by our statutes that the commissioner shall have a seal designed for this state alone.'

It is difficult to avoid the force of this reasoning. [***9] In truth, as it appears to us, it cannot be avoided without, in effect, by judicial construction, doing away with a statutory requirement. That we are not disposed to do; **hence must hold that, for want of a proper verification of the complaint**, the order for service by publication of the summons in the original action was **void**, and, on that account, **that the court failed to obtain jurisdiction to render the judgment in such action**, hence no jurisdiction to render the judgment appealed from.

***By the Court*** --**The judgment of the circuit court is reversed**, and the cause remanded for further proceedings according to law.

# MIDDLETON PAPER CO. v. ROCK RIVER PAPER CO., Defendant, and another, Garnishee

**[federal] Circuit Court, W. D. Wisconsin**

*19 F. 252; 1884 U.S. App. LEXIS 2025*

**January 26, 1884**

**COUNSEL:** [**1]

Tenny & Bashford, for plaintiff.

Pease & Rugen, for defendant and garnishee.

**OPINION BY:**

BUNN

**OPINION:**

[*252] BUNN, J. This action was brought by the **plaintiff**, a citizen of **Ohio**, against the defendant, the **Rock River Paper Company**, a citizen of **Wisconsin**, upon an acceptance made by said defendant in favor of the plaintiff. John Hackett, also a citizen of Wisconsin, was served with garnishee process, issued and signed by the plaintiff's attorneys, according to the forms of proceeding in such cases under the laws of Wisconsin. The defendant's attorneys, appearing for the garnishee for that **special purpose**, move the court to set aside the garnishee proceedings, on the ground that **no** sufficient process has been served upon the defendant. Section 911, Rev. St., provides that "all writs and processes issuing from the courts of the United States shall be under the seal of the court from which they issue, and shall be signed by the clerk thereof. Those issuing from the **supreme court** or a circuit court shall bear ***teste*** of the chief justice of the United States. And rule 20 of the rules for this district provides that **all process shall be issued by the clerk under the seal** [**2] of the court, and shall be signed by the clerk issuing the same, and shall be returnable at Madison or La Crosse, **as directed by the party applying therefor**. The garnishee summons in this case, served upon the defendant in the garnishee proceedings, is in the form prescribed by the law and practice in the state court, runs in the name of the **state of Wisconsin**, has no seal, and is issued and signed by the plaintiff's attorneys.

The question is whether in view of the foregoing provisions such a practice can obtain in this court; and it seems quite clear that it [*253] cannot. It is true that section 914, Rev. St., provides that the practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the circuit and district courts shall conform as near as may be to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held, any rule of court to the contrary notwithstanding. But it is evident that this provision must receive a reasonable construction in connection with the other provisions above referred [**3] to, requiring process to be issued by the clerk of this court **under the seal thereof**. Under the state law in this state and in New York and some other states, the plaintiff's attorney issues the summons, which is the commencement of a suit. But I believe it has uniformly been held, in view of the provisions of congress, **that this cannot be done in the federal courts**; and so it has been the uniform practice in this state, so far as our knowledge goes, that the summons, as well as writs of attachment and arrest, are issued by the clerk of this court under the seal of the court, **run in the name of the president of the United States and bear *teste* of the chief justice of the United States**. In other respects they are in substance and form as prescribed by the laws of the state.

It is insisted, however, by plaintiff's attorneys, that a garnishee summons is not "**process**". I am unable to concur in this view. Both the statues and decisions of the state courts regard the garnishee proceedings as the commencement of a new suit against the defendant therein. Section 3766, Rev. St. Wis., provides: "The proceedings against a garnishee shall be deemed an action, by the plaintiff against [**4] the garnishee and defendant, as parties defendant, and all the provisions of law relating to proceedings in civil actions at issue, including examination of the parties, amendments, and relief from default, or proceedings taken, and appeals, and all provisions for enforcing judgments, shall be applicable

thereto. The statute provides for the formation of an issue and trial, and a personal judgment against the garnishee defendant. He may also be punished for contempt for failing to answer when duly summoned. See, also, *Atchison v. Rasalip, 3 Pin. 288; Orton v. Noonan, 27 Wis. 572; Everdell v. S. & F. du L.R. co. 41 Wis. 395.* Although the garnishee proceedings are ancillary and auxiliary to the suit against the original defendant, they are nevertheless properly regarded as constituting a separate action against the garnishee. And the summons served upon him is the "**process**" by which the court is to get jurisdiction of the action, if it gets it at all. **It comes within any definition of process with which the court is acquainted.** The summons, notice writ, **or whatever it may be called**, by virtue of which a defendant is **required** to come into court and answer, [**5] litigate his rights, **and submit to the personal judgment of the court, must** be "***process* within the meaning of the law of congress**" and the rule of the court, which is to be issued [*254] by the clerk of this court, **under the seal of the court** and *tested* in the name of the chief justice of the United States. And this makes the practice in this court consistent and uniform. There would be no consistency in requiring the summons, by which the action is begun, to be issued from the court and allow the garnishee summons to be issued by the attorney. It is no doubt the policy of the law to keep process under the immediate supervision and control of the court.

The plaintiff's counsel ask for leave, in case the practice is held to be irregular, to allow an amendment; and the law of amendments is ample for the purpose, if the defect be curable by amendment. But the difficulty is, there is nothing to amend by. If process, in some respects irregular in form or substance, had been issued, the court could amend it. For instance, if the clerk had issued the summons and failed to seal it, the court could order it sealed. But no process, regular or irregular, has been issued [**6] **by the proper authority**. Hence it is that the court gets no jurisdiction of the case, and there is nothing to amend by.

**The motion must therefore be allowed, and the garnishee proceedings set aside.**

SUM-130

# SUMMONS
## (CITACIÓN JUDICIAL)
### UNLAWFUL DETAINER—EVICTION
### (RETENCIÓN ILÍCITA DE UN INMUEBLE—DESALOJO)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED
FILED
ALAMEDA COUNTY

CLERK OF THE SUPERIOR COURT

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):*** JON LEWIS aka JONATHAN LEWIS aka JONATHAN ANTHONY, KAREN I. LEWIS, PAUL JAMES COPPOCK aka PAUL JAMES, and DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):*** CROWD FUND INVESTMENT GROUP LLC

You have 5 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. (To calculate the five days, count Saturday and Sunday, but do not count other court holidays. If the last day falls on a Saturday, Sunday, or a court holiday then you have the next court day to file a written response.) A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*Tiene 5 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. (Para calcular los cinco días, cuente los sábados y los domingos pero no los otros días feriados de la corte. Si el último día cae en sábado o domingo, o en un día en que la corte esté cerrada, tiene hasta el próximo día de corte para presentar una respuesta por escrito). Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

1. The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
1225 FALLON STREET, OAKLAND, CA 94612

CASE NUMBER: *(Número del Caso):* RG16838956

2. The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
JONATHAN SEIGEL (State Bar # 168224)
SCHEER LAW GROUP, LLP, 155 N. REDWOOD DRIVE, SUITE 100, SAN RAFAEL, CA 94903
Phone No.: (415) 491-8900
Fax No.: (415) 491-8910

3. *(Must be answered in all cases)* An **unlawful detainer assistant (Bus. & Prof. Code, §§ 6400–6415)** [X] did not [ ] did for compensation give advice or assistance with this form. *(If plaintiff has received any help or advice for pay from an unlawful detainer assistant, complete item 6 on the next page.)*

Date: *(Fecha)* NOV 15 2016 Chad Finke Clerk, by *(Secretario)* Asal Sponsel, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

4. **NOTICE TO THE PERSON SERVED:** You are served
   a. [X] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of *(specify):*
   c. [ ] as an occupant
   d. [ ] on behalf of *(specify):*
   under:
   - [ ] CCP 416.10 (corporation)
   - [ ] CCP 416.20 (defunct corporation)
   - [ ] CCP 416.40 (association or partnership)
   - [ ] CCP 415.46 (occupant)
   - [ ] CCP 416.60 (minor)
   - [ ] CCP 416.70 (conservatee)
   - [ ] CCP 416.90 (authorized person)
   - [ ] other *(specify):*
5. [ ] by personal delivery on *(date):*



Form Adopted for Mandatory Use
Judicial Council of California
SUM-130 [Rev. July 1, 2009]

SUMMONS—UNLAWFUL DETAINER—EVICTION

Exhibit E

Code of Civil Procedure, §§ 412.20, 415.456, 1167
www.courtinfo.ca.gov

SUM-130

| PLAINTIFF (Name): CROWD FUND INVESTMENT GROUP LLC | CASE NUMBER: |
|---|---|
| DEFENDANT (Name): JON LEWIS aka JONATHAN LEWIS aka JONATHAN ANTHONY, et al. | |

6. **Unlawful detainer assistant** *(complete if plaintiff has received any help or advice for pay from an unlawful detainer assistant):*
   a. Assistant's name:
   b. Telephone no.:
   c. Street address, city, and zip:

   d. County of registration:
   e. Registration no.:
   f. Registration expires on *(date)*:



LexisNexis® Automated California Judicial Council Forms

karen irene, House of Lewis
Real Party in Interest
Third Party Intervenor
c/o 484 Lake Park Ave #117
city Oakland, California state of the Union
510-495-5699

KAREN I. LEWIS, Defendant

ENDORSED
FILED
ALAMEDA COUNTY
FEB 0 8 2017
CLERK OF THE SUPERIOR COURT
By FILIPINO TUNGOHAI Deputy

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| CROWD FUND INVESTMENT GROUP LLC,<br><br>Plaintiff,<br><br>vs.<br><br>JON LEWIS aka JONATHAN LEWIS, aka JONATHAN ANTHONY, et al.,<br><br>Defendants. | Case No. RG16838956<br><br>**VERIFIED ANSWER TO COMPLAINT FOR UNLAWFUL DETAINER - LIMITED** |

**COMES NOW karen irene, FOR KAREN I. LEWIS ALONE (henceforth "Defendant" or "This Defendant") AND FILES THIS VERIFIED ANSWER TO COMPLAINT FOR UNLAWFUL DETAINER.**

/////

/////



Exhibit C

1. This Defendant has neither basis in fact nor on information and belief to admit or deny the allegations in Paragraph 1 of the Complaint.

2. This Defendant has neither basis in fact nor on information and belief to admit or deny the allegations in Paragraph 2 of the Complaint.

3. This Defendant has neither basis in fact nor on information and belief to admit or deny the allegations in Paragraph 3 of the Complaint.

4. This Defendant denies each and every allegation in Paragraph 4 of the Complaint.

5. This Defendant denies each and every allegation in Paragraph 5 of the Complaint.

6. Except for denying that Plaintiff's title to the Property was duly perfected, this Defendant has neither basis in fact nor on information and belief to admit or deny the allegations in Paragraph 6 of the Complaint

7. This Defendant denies the allegations in Paragraph 7 of the Complaint.

8. This Defendant denies the allegations in Paragraph 8 of the Complaint.

9. This Defendant denies the allegations in Paragraph 9 of the Complaint.

10. This Defendant denies the allegations in Paragraph 10 of the Complaint.

**AFFIRMATIVE DEFENSES**

11. Each and every purported cause of action alleged against this Defendant fails to set forth facts sufficient to constitute a cause of action.

12. Plaintiff is barred from recovery against this Defendant by the doctrine of waiver.

13. Plaintiff is barred from recovery against this Defendant by the doctrine of unclean hands, as this action is untimely and brought without issue against this Defendant and has damaged Defendant's right to quiet use and enjoyment of the Property.

14. Plaintiff is barred from recovery against this Defendant, as Plaintiff has suffered neither injury nor damage resulting from or proximately caused by this Defendant's conduct or any of the conduct alleged in the Complaint.

15. Plaintiff is barred from recovery against this Defendant because she is a misjoined party.

16. Plaintiff is barred from recovery against this Defendant because Plaintiff has not met conditions precedent to filing an action in unlawful detainer against this Defendant.

17. Plaintiff's claim of ownership is invalid and without merit, as its purported title is the result of a wrongful foreclosure, where the foreclosing parties did not have and could not convey a beneficial interest in the Property.

18. This Court is an unsuitable forum to litigate complicated issues of ownership. Asuncion v. Superior Court (1980) 108 Cal App 3d 141 145-146.

WHEREFORE, karen irene prays for judgment as follows:

1. That Plaintiff takes nothing by way of either of the causes of action of the herein Complaint.
2. That karen irene be awarded cost of defending the herein action.
3. That karen irene be awarded reasonable attorney fees, if incurred.
4. For such other and further relief as the Court deems just and proper.

DATED: February 7, 2017

KAREN I. LEWIS
BY:

Karen irene

karen irene
all rights reserved without prejudice non assumpsit

**VERIFICATION**

I, karen irene, certify and declare that I have read the foregoing ANSWER TO COMPLAINT FOR UNLAWFUL DETAINER. The matters stated in the pleading described above are true of my own knowledge and belief, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. EXECUTED on February 7, 2017 at Oakland, California.

Karen irene

karen irene

all rights reserved without prejudice non assumpsit